[No. 25397. Department One. November 5, 1935.]

POHLMAN INVESTMENT COMPANY, *Appellant*, v. VIRGINIA CITY GOLD MINING COMPANY, *Respondent*.[1]

*O. C. Moore* and *John E. Blair*, for appellant.

*Cannon, McKevitt & Fraser* (*Joseph L. Thomas*, of counsel), for respondent.

GERAGHTY, J.—This action was brought by the plaintiff against the defendant for the specific performance of a contract for the sale of defendant's treasury stock, and for an accounting and damages in so far as a remedy by specific performance might be found unavailing. After trial of the cause to the court, judgment was entered dismissing the action. The plaintiff appeals.

[1] Reported in 51 P. (2d) 363.

Mabelle L. Mallette, being the owner of certain patented mining claims in Montana, in July, 1932, through her son, Walter K. Mallette, as her attorney in fact, made an agreement with appellant, Pohlman Investment Company, designated in the agreement as "Fiscal Agent," by the terms of which a corporation was to be organized, under the laws of Washington, at the expense of the fiscal agent, with a capital of $200,000 divided into 2,000,000 shares of the par value of ten cents each. The agreement provided that, upon the organization of the corporation, Mrs. Mallette would convey the mining claims to the corporation in full payment of its capital stock, and that she would transfer to the treasury of the corporation 600,000 shares for its use in the development of its properties. It was agreed that appellant, as fiscal agent, should have the exclusive sale of the treasury stock, and that the corporation should, after its organization, make a contract with the fiscal agent for the sale of the stock on terms specified in the agreement.

Thereafter, the respondent corporation was organized, its capital stock subscribed by Mrs. Mallette, the mining properties conveyed to it in payment of her stock subscription, and the stipulated number of shares transferred to the treasury. The articles of incorporation provided for a board of three trustees. Walter K. Mallette, Edward Pohlman and Fred W. Calloway were named in the instrument as the first trustees. Mallette became president; Calloway, vice-president; and Pohlman, secretary-treasurer.

Edward Pohlman was also president of the appellant Pohlman Investment Company, and the owner of fifty per cent of its capital stock. J. V. Pohlman, a brother of Edward, was vice-president and owner of the remainder of its stock, with the exception of ten shares held by George Pohlman, a third brother. The

brothers, Edward and J. V. Pohlman, transacted all the business of the Pohlman Investment Company.

October 7, 1932, in accordance with the terms of the agreement of July 18, the contract upon which this suit is based was executed by the appellant and respondent, and is as follows:

"THIS CONTRACT, made in duplicate this 7th day of October, 1932, by and between VIRGINIA CITY GOLD MINING COMPANY, a Washington corporation, hereinafter called the 'Company,' and POHLMAN INVESTMENT COMPANY, a Washington corporation, hereinafter called the 'Fiscal Agent', WITNESSETH:

"For and in consideration of the mutual promises hereinafter contained it is understood and agreed between the respective parties:

"I. The Board of Trustees of the Company has heretofore authorized the making of the following agreement and option and it is in accordance with said authority that this agreement is made.

"II. The Fiscal Agent, having heretofore been appointed by the Company as Fiscal Agent, and having rendered services to the Company, in its creation, and having agreed to devote its best efforts towards furthering the sale of the Company's shares, in consideration thereof the Company contracts to sell to the Fiscal Agent its treasury shares, as follows:

"Four Hundred Thousand (400,000) shares, to net the Company Five (5) cents per share, payable as follows:

"One Hundred Thousand (100,000) shares on or before October 18, 1932;

"Three Hundred Thousand (300,000) shares on or before January 19, 1933;

"Two Hundred Thousand (200,000) shares more on the following basis:

"One Hundred Thousand (100,000) shares to net the Company Six (6) cents per share; and One Hundred Thousand (100,000) shares to net the Company Seven (7) cents per share.

"Payment for the latter two (2) blocks of One Hun-

dred Thousand (100,000) shares each to be completed within one year from July 18, 1932.

"IN WITNESS WHEREOF, the parties have attached their names hereto the day and date above mentioned.

"VIRGINIA CITY GOLD MINING COMPANY
"By WALTER K. MALLETTE
"Its President
"EDW. POHLMAN
"Its Secretary
"POHLMAN INVESTMENT COMPANY
(Seal) "By J. V. POHLMAN"

After the organization of the Virginia City Gold Mining Company, the president, Walter K. Mallette, a mining engineer by profession, devoted his attention in the main to the development of the company's property in Montana. The Pohlman Investment Company, as fiscal agent, had charge of the financial affairs of the company and the sale of its treasury stock, the proceeds from this stock being the resources upon which the progress of development depended. The mining company maintained its offices in the suite occupied by the investment company, for which it paid the latter company a monthly rental. The books and records of the mining company were in the possession of Edward Pohlman, the secretary-treasurer.

The sale of treasury stock moved slowly, and Mallette, by letters and telegrams, urged upon the Pohlmans his pressing need of money to carry on necessary work at the mine. The contract provided for the sale of 100,000 shares by October 18, 1932, and 300,000 shares on or before January 19, 1933. On October 19, 1932, by resolution of the trustees of the mining company, the time for completing the sales was extended sixty days as to the first block of 100,000 shares and ninety days as to the 300,000 block. On the expiration of the sixty-day extension upon the first block, December 18, 1932, the Pohlmans were in default, having

sold considerably less than the required number of shares. Mallette continued to urge his need for money, and shortly before Christmas returned to Spokane. In Spokane, he had numerous conversations with the Pohlman brothers in relation to the affairs of his company and the raising of needed money by the sale of treasury stock.

On January 21, 1933, at a meeting of the trustees of the mining company, Mallette and Pohlman being present, Calloway, the third trustee, having died, a resolution was adopted cancelling the agreement with the Pohlman Investment Company. At the meeting, a form of letter to be addressed to the investment company notifying it of the cancellation was approved and directed to be served upon that company. Edward Pohlman, president of the investment company, voted for the motion cancelling the agreement and approved the form of notice to his company. Questioned about this meeting, Mr. Pohlman testified:

"Did Mr. Mallette tell you why he wanted a meeting of the directors? A. Yes. Q. What did he say he wanted it for? A. To discuss this contract. Q. Did he have to have a meeting of the directors to discuss the contract? A. He had to discuss it before any action could be taken. Q. Tell us what took place when you got into that meeting there? A. Mr. Mallette urged me to join him in cancelling this contract. Q. What reason did he give? A. He thought it might be for the best interest of the company. Q. Did you agree? A. I agreed, yes."

Mallette testified that, at a meeting with Edward and J. V. Pohlman in the Spokane City Club January 19, 1933, the Pohlmans said they would be unable to produce the money required to fulfill their part of the contract and that it was necessary for the company to do something else; that he suggested that the best arrangement for the corporation would be to allow the sale of the stock to go ahead and allow Crosby to sell

all the stock that he could, and he would reserve the right to divide the stock between them, letting each, as agent, sell whatever he could sell until such time as the treasury requirements were completed. That was the arrangement agreed upon at the City Club at the time.

In explanation of the reference to Crosby, it appears that, after the preliminary agreement of July 18, the Pohlman Investment Company had assigned to J. J. Crosby, a one-third interest in the agreement. Crosby was a member of the staff of the investment company and was expected to take active charge of the sale of the mining company's treasury stock. His connection later became unsatisfactory to the Pohlmans, and they sought Mallette's aid in eliminating him from the position. This, Mallette declined to do, taking the position that Crosby was the problem of the Pohlmans, who had assigned to him an interest in the agreement.

In their testimony, both the Pohlmans denied there had been a meeting at the Spokane City Club before the adoption of the cancellation resolution, and said the three met at the club after the passage of the resolution, at which time J. V. Pohlman expressed his dissatisfaction with what had been done.

January 23, 1933, the two remaining trustees, Mallette and Pohlman, held a meeting at which Bliss Moore was elected trustee to fill the vacancy caused by the death of Calloway. At this meeting, participated in by the new trustee, a motion was adopted, Edward Pohlman voting in the affirmative, authorizing Mallette, as president of the company, to negotiate for the disposal of 300,000 shares of the treasury stock to the best advantage, at a price not less than five cents a share, net to the company.

With reference to these two meetings, when questioned by the attorney for respondent as to his vote, Edward Pohlman admitted that, on January 21, 1933,

he knew there was some necessity for a different plan for the disposal of the treasury stock in order to raise money for operations. He said that he consented to the cancellation of the contract in a moment of weakness. Asked about his subsequent vote on the resolution of January 23 for the sale of 300,000 shares of the treasury stock covered by his company's agreement, he said: "It might have been a repetition of weakness, or it might be that I was trying to be consistent."

A stockholders' meeting of the mining company was held February 14, 1933, at which Mallette, Edward Pohlman and Moore were reelected trustees for the ensuing year. On the organization of the board, Edward Pohlman was reelected secretary-treasurer, and J. V. Pohlman, assistant secretary. J. V. Pohlman testified that he was not notified of his election, but admitted that he served for the purpose of signing stock certificates in the absence of his brother.

Subsequently, at a meeting of the board of trustees held on March 14, 1933, at which Mallette, Moore and Edward Pohlman were present, upon motion of Moore, seconded by Pohlman, it was resolved that there be held intact and reserved from sale 200,000 shares of the treasury stock, subject to further action of the board; and Mallette, as president of the company, was empowered to arrange for the sale of the balance of the 400,000 shares, this authorization superseding that of January 23. At this meeting, also, a recommendation by Mallette that 15,000 shares of the treasury stock be set aside for subscription by the employees of the company was adopted upon motion of Moore, seconded by Pohlman. It is to be borne in mind that the stock affected by these several resolutions was the treasury stock covered by the agreement of October 7, 1932, under which the appellant is claiming.

In March, negotiations were entered into with another firm of brokers, Robinson & Rotchford, for the sale of stock, and later a definite agreement was made with this firm. About the negotiations with Robinson & Rotchford, Edward Pohlman testified:

"A. There was a discussion about a new arrangement. Q. Tell us what they said to you the best that you can recall. A. Without giving any details whatever, they wanted to know in a general way if it was satisfactory to me, and I believe I gave my approval at that time. THE COURT: Q. Let me ask you this, Mr. Pohlman: your approval to secure another stock broker, Robinson & Rotchford? MR. McKEVITT: I believe he qualified it by saying that Robinson & Rotchford were not mentioned, but that an arrangement was made for disposing of the treasury stock. A. Those arrangements were pending. Q. They gave you to understand arrangements were pending for the disposal of this stock by others, and you gave your approval, is that what your testimony is? A. Yes."

May 26, 1933, Mallette, as president of the mining company, addressed a letter to Edward Pohlman, its secretary, requesting the issue to Robinson & Rotchford of one certificate of 150,000 shares of the treasury stock.

The Pohlman brothers resigned as secretary and assistant secretary May 31, 1933, and early in the succeeding June this suit was brought.

The Pohlmans made no objection to the various transactions in relation to the sale of the treasury stock had prior to their resignations, other than what was testified to by J. V. Pohlman in relation to the meeting between the brothers and Mallette at the Spokane City Club, and his further testimony that he once complained to Mr. Edmund Twohy, the attorney for the mining company.

By the time the brothers resigned their executive offices, practically all of the treasury stock had been

disposed of. They participated in the sale of treasury stock under the new conditions following the cancellation of the contract and received altogether from Mallette, out of his personal holdings of company stock, a large number of shares as a bonus for the sale of treasury stock by them prior to, and after, the cancellation of the agreement.

In its memorandum opinion, the trial court said:

"I am satisfied that the contract was cancelled on January 19, 1933, and that the plaintiff corporation and its officers, at least by word of mouth and written correspondence, had prior and ample notice that such action would be taken.

"I am satisfied that the two Pohlman brothers, Edward and J. V., with whom we are principally concerned, and who own 99 per cent of the stock of the plaintiff corporation, and who have, with another brother, been the sole and only owners, managers, and principal representatives of the corporation for thirty years, approved by their acts, deeds, and general course of conduct, of said cancellation. These two brothers, during the life of their corporation, have undoubtedly at all times, been cognizant of each other's acts in connection with the corporate business and have approved of the same, and each at one time or another, as the case may be, has been the 'alter-ego' of the corporation; and neither of these gentlemen, in equity or good conscience, may now be heard to say that because there was no formal resolutions or meetings approving of the cancellation of the defendant corporation, that it is invalid.

"It seems clear to me that the contracts of the parties (Exhibits A and D to the complaint), as well as the evidence in the case, clearly demonstrated that the negotiations and contracts between the parties, contemplated the development of the mining property in Montana, and the constant and regular sale of stock over a period of at least a year; and it is, of course, plain (if not conceded) that the plaintiff failed to sell treasury stock according to the terms of the contract (Ex. D to complaint).

"In short, it seems plain that this is a case where the Court must, in considering the plaintiff corporation and its officers and sole owners, 'Pierce the veil of corporate entity,' and hold that the corporation, by, through, and on account of the acts, deeds, declarations, and general course of conduct of its officers, and directors, acquiesced in and ratified the cancellation of the contract, and that the plaintiff is estopped from taking a different position."

The appellant contends the contract was severable and that its admitted default in not completing the sale of the first hundred thousand shares did not affect its right to the exclusive sale of the other blocks of treasury stock, upon which it was not in default. If a determination of this issue were necessary to a decision of the case, the nature of the contract and the surrounding circumstances would weigh heavily against appellant's contention. The primary purpose of the parties in making the contract was to develop a mine. This development required a continuous flow of capital into the treasury from the only source available, the sale of treasury stock. All of the parties had in contemplation that the sale of the 600,000 shares would be necessary to finance the company, and so the sales of the several blocks of stock were timed to supply current funds for the company's operations. It would wholly defeat the purpose of the contract and be fatal to the company if, upon failure of appellant to meet its engagements in the sale of the first block, the mining company could only sit and wait for the outcome of appellant's efforts in the sale of the second. But we are in agreement with the trial court that the question whether or not the contract was severable is unimportant, since the appellant is estopped by its own acts and acts of the Pohlmans from questioning the cancellation effected by the resolution of January 21.

 It will not do to say that the Pohlman Investment Company is not bound by the part taken by Edward Pohlman, its president, in the cancellation and subsequent transactions, or by the acquiescence of Edward and his brother, evidenced by participating in the new arrangements for the sale of stock succeeding the cancellation of the contract.

In the language of this court in *State v. Davies,* 176 Wash. 100, 28 P. (2d) 322,

"Where a private person so dominates and controls a corporation that such corporation is his *alter ego,* a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same."

The record discloses that the difference between the Pohlman brothers and the Pohlman Investment Company was not much regarded. Illustrative of this is the arrangement under which Mallette agreed to give one share of his personal stock as a bonus for the sale of each share of treasury stock. On July 18, 1932, the date of the preliminary agreement, Mallette addressed a letter to Edward Pohlman, "as agent for Edw. Pohlman, J. V. Pohlman, and J. J. Crosby," in which it is agreed that, upon fully paid orders for the treasury stock of the mining company then forming, from the fiscal agent to the corporation, Mallette would cause to be issued to Edward Pohlman, "as agent for the three persons first above addressed," one share of his personal stock for each share of treasury stock sold by the fiscal agent. While this agreement for bonus stock was not embodied in the contract of October 7, the bonus was paid on all stock prior to the cancellation of the contract, and a like bonus was given for stock sold after the cancellation.

It is significant that the appellant took no definite step to challenge the cancellation of its contract until

practically all of the treasury stock had been disposed of. So long as there was stock to sell, the appellant continued to participate in the sale. Prior to the cancellation, appellant had been unable to sell the stock at the time and in the quantity agreed upon. After cancellation, it appears to have had an opportunity to sell as much of the stock as it could. It did not abandon connection with the mining company until the possibility of further profit had gone and it had nothing to lose by making a claim based upon the forfeiture of contract.

The judgment will be affirmed.

MILLARD, C. J., TOLMAN, MAIN, and BEALS, JJ., concur.