**A. E. HOSS and Sullens & Hoss, Inc., a corporation, Appellants,**

**v.**

**C. G. (Jim) PURINTON, Appellee.**

**No. 14387.**

United States Court of Appeals
Ninth Circuit.

Dec. 21, 1955.

Rehearing Denied Jan. 9, 1956.

Writ of Certiorari Denied
March 26, 1956.

See 76 S.Ct. 547.

Bell & Sanders, Bailey E. Bell, William H. Sanders, Anchorage, Alaska, for appellants.

Wendell P. Kay, John Rader, Anchorage, Alaska, for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of the United States District Court for the District of Alaska awarding damages to Purinton on the special findings of a jury on two causes of action. One cause of action, which we first consider, was for advances made by Purinton at the request and for the benefit of appellants for which the jury found them liable.

(A) *The liability of appellants for advances by Purinton.*

Appellant Sullens and Hoss is a corporation. It and Hoss owned and operated a lumber mill through a corporation, Timber, Inc., which they created and controlled. Purinton was the superintendent of the mill and made advances of moneys for its operation which the ju-

ry's special verdict held amounted to $2,306.81, an amount not questioned here by the parties.

Appellants contended at the trial that Purinton was not entitled to recover for his advances for expenses of running the sawmill because of the terms of an express contract providing for his compensation out of the profits of the mill. Purinton voided this contract when he filed the instant suit.

The trial judge, in instructing the jury, stated:

"I have found that this contract is void as a matter of law, having been declared void by the plaintiff at a time when he had the right so to do, and further because it was not a completely integrated agreement expressing the full understanding of the parties."

The jury was instructed to give no effect to the contract in reaching its verdict. The appellants contend this was error.

Purinton declared at the beginning of the trial that he had avoided the alleged contract between himself and Timber, Inc. on the ground that it was voidable under Section 36-1-122, A.C.L.A., 1949. That section requires corporations annually to file with the Auditor of the Territory of Alaska and with the Clerk of the District Court in each Division where they do business a report of their financial condition. The section further provides:

"And if any corporation shall fail to file its annual reports as required in this section, *all contracts* made by such corporation with the residents of the Territory of Alaska, made in the Territory, *shall be voidable as to the corporation during the time it shall neglect to file such report,* and no Court in the Territory shall enforce same in favor of the corporation." [Emphasis added.]

Timber, Inc., filed no annual reports for 1951, 1952 and 1953 until two and three days after this suit was commenced and after Purinton had stated he was avoiding the contract.

Appellants urge that Section 36-1-122 does not prevent them from asserting the alleged contract as a defense. They first contend that it must be read in conjunction with Sections 36-6-9, 36-6-10 and 36-6-12 which deal with striking from the records Alaskan corporations which fail to pay the annual corporation tax for two years and reinstatement of such corporations. Section 36-6-12 reads:

"[After reinstatement] * * * such corporation shall have and enjoy the same rights and powers as if its name had never been stricken from the records, and all things done by it in the exercise of its corporate powers before such reinstatement are hereby validated and confirmed."

Appellants contend that § 36-1-122 and § 36-6-12 should be construed together. Assuming they were so to be construed, appellants would have the words "no Court in the Territory shall enforce same [a contract avoided] in favor of the corporation" mean no more than that a corporate creditor who has avoided the contract shall be withheld from suing on it so long as the corporation chooses to continue to violate § 36-1-122 by not filing its reports.

That is to say, such a debtor corporation having already violated the act for three years might continue to violate it for another three years or indeed ten years, until the creditor litigant against it had lost his witnesses and other evidence and then have validated the voided contract. When it finally complied with the statute, it well could argue that since it "shall have and enjoy the same rights and powers as if its name had never been stricken", it then could plead the expiration of the statute of limitations on suits on such contracts. It could reenforce that unjust argument by pointing out that while under § 36-6-12 *its* "rights" were restored no provision was made for restoring the rights of its creditors.

■ Furthermore, in any event since as decided in the instant case the interest runs only from the date of the judgment the corporation could avoid interest on the damages for the breach of the contract for as long as it chose to violate the law.

■ We think the Alaska legislature intended none of these absurdly unjust results in enacting these sections and that the words of § 36–6–12, "all things done by it * * * before such reinstatement are hereby validated and confirmed" apply to the things done by "it" and not the thing done by Purinton in avoiding the contract. The legislature meant exactly what it said in the words of § 36–1–122 that "no Court in the Territory shall enforce same in favor of the corporation."

■ However, we do not agree that these two statutes, 36–1–122 and 36–6–12 should be considered together. 36–6–12 affords relief only from the striking of the name of the corporation from the records of the Auditor's office for neglect for two years of payment of the annual corporation tax, provided for in § 36–6–9, an entirely different offense from failing to file the reports required by § 36–1–122.

This appears from the italicized matter in the two statutes as follows:

"§ 36–6–9. Striking from record name of corporation failing to pay tax. It shall be the duty of the Auditor of the Territory of Alaska to *strike from the records of his office* the names of all corporations which have neglected, or which shall hereafter neglect, for a period of two years to pay their annual corporation tax. [L 1921, ch 22, § 8, p 81; am L 1929, ch 118, § 6, p 282; CLA 1933, § 1019.]

"§ 36–6–12.—*Effect on rights and powers of corporation.* Thereafter such corporation shall have and enjoy the same rights and powers *as if its name had never been stricken from the records,* and all things done by it in the exercise of its corporate powers before such reinstatement are hereby validated and confirmed. [L 1921, ch 22, § 11, p 82; CLA 1933, § 1022.]" (Emphasis added.)

The district court properly held that the alleged contract between Purinton and Timber, Inc., was voided under § 36–1–122 and that it was not revived by the subsequent filing of its annual reports. The contract was void for all purposes and could be used for no purpose by Timber, Inc.

Appellants further contend that they did owe these moneys that Purinton paid but that it was owed by Timber, Inc., only. Purinton contended that Timber, Inc., was merely the alter ego of Hoss and the court instructed the jury it so could find and hold Hoss liable on an implied contract, which it did.

■ We think there was abundant evidence to support this instruction. It never issued any stock at all to any shareholder. It made none of the annual reports of its transactions required by the Alaska law. Section 36–1–122, A.C.L.A., 1949. No stockholders meetings were ever held. The minutes of purported directors meetings were prepared and signed by those who did not attend. Before the transactions here involved, the directors meeting of August 14, 1951 gave to Hoss the entire power to conduct the corporate affairs. From that time to February, 1953, when Purinton ended his employment begun on July 15, 1952, no directors action was had.

The only asset was the mill which was mortgaged for its purchase price to Sullens and Hoss and afforded no basis for realizing claims against the corporation such as Purinton's. Hoss testified that two persons he named and others unnamed, had agreed to become stockholders. None did and the jury well could have not believed any of his statements. All the lumber manufactured by Timber, Inc., was transferred to the corporation, Sullens and Hoss, which produced testimony that there were certain advances to pay for it. Purinton testified that

these advances were not made and the jury could have believed him, and regarded the transaction as a mere act of Hoss in his alter ego capacity. Furthermore, Hoss, though claiming Timber, Inc., had such assets, and relying on the defense last considered that the corporation was not liable, did not have Timber, Inc., appeal from the judgment.

With regard to Sullens and Hoss, this corporation was formed by these two men, Sullens, however, ceasing to have any interest therein before the events pertinent here. There is abundant similar evidence for the determination by the jury that it was dominated and controlled by Hoss as his alter ego.

The evidence supports the Court's instruction that the jury could find that both these corporations were mere conduits for Hoss' own business and that he became liable for Timber, Inc.'s debts. Adolph Ramish, Inc., v. Laugharn, 9 Cir., 1936, 86 F.2d 686; Telis v. Telis, 1942, 132 N.J.Eq. 25, 26 A.2d 249; Pohlman Investment Co. v. Virginia City Gold Mining Co., 1935, 184 Wash. 273, 51 P.2d 363; Stark v. Coker, 1942, 20 Cal.2d 839, 129 P.2d 390.

■ It has been suggested that Purinton is taking inconsistent positions when he asserts (1) a right to avoid the joint-venture contract with Timber, Inc. on the ground that it had failed to file the required annual reports, and (2) a right to a personal judgment against Hoss on the ground that Timber, Inc. was only his alter ego. There is no inconsistency. Such a suggestion ignores the reasons for the doctrine of looking through the corporate entity and for the penalty imposed by the Alaska statute for failure to file annual reports.

The suggestion assumes that either the corporation exists or does not exist for any and all legal purposes. This is not so. Each corporate contract must be examined independently to determine whether the circumstances justify looking through the corporate entity and affixing liability on a shareholder. The Timber, Inc.-Purinton joint-venture contract was voidable under Alaska law. Hoss cannot assert that Timber, Inc. did not exist and therefore was under no obligation to file reports. Hoss selected this method of operating his business and must take the consequences. On the other hand, the jury was free to award a judgment against Hoss to avoid the injustice of allowing him to hide behind the undercapitalized corporate entity of Timber, Inc. for the reasons discussed above.

If the court were to hold that Timber, Inc. did not exist for any purpose and therefore had no obligation to file annual reports, it would be holding in effect that one who failed to properly capitalize a corporation for the protection of its creditors would have the advantages of its contracts even though no reports were filed while one who set up a fully capitalized corporation and failed to file reports would have no such advantage. Courts do not look through a corporate entity to give advantages to the one who purposefully undercapitalizes it.

Appellants contend the court erred in overruling their motion to exclude the testimony of Hoss' divorced wife as to occurrences before the divorce, she having been permitted to testify regarding her absence from directors meetings and her belief none were held. She gave no testimony of private communications between herself and her husband.

We think § 58–6–3 of the Alaska Code relied on by appellants, plainly indicates the contrary. It reads:

> "A husband shall not be examined for or against his wife, without her consent, nor a wife for or against her husband, without his consent; nor can either, *during the marriage or afterwards* be, without the consent of the other, examined *as to any communications made by one to the other during marriage* * * *." (Emphasis added.)

The cases hold that while a wife, after she is divorced, cannot be examined as to communications between her and her husband made during marriage, she

may testify for or against her husband as to other matters. See, e. g., Cohen v. United States, 5 Cir., 1941, 120 F.2d 139; United States v. Gonella, 3 Cir., 1939, 103 F.2d 123; Yoder v. United States, 10 Cir., 1935, 80 F.2d 665; 8 Wigmore on Evidence, § 2237 (3d ed. 1940); 46 Mich. L.Rev. 664, 672 (1948).

(B) *Purinton's claim for the non-payment of $2,700 for the sale of lumber by him to Hoss and the corporation of Sullens and Hoss.*

■ Purinton's complaint states his claims in paragraph V as follows:

"That on or about the 1st day of March, 1953, plaintiff sold and delivered to the defendant, A. E. Hoss, acting through his alter ego, Sullens & Hoss, Inc., approximately 45,000 board feet of lumber at an agreed price of $60.00 per thousand feet, of a total value of Two Thousand Seven Hundred ($2,700.00) Dollars; that by reason of the said purchase, defendants, A. E. Hoss and the alter ego, Sullens & Hoss, Inc., became indebted to the plaintiff in the sum of Two Thousand Seven Hundred ($2,-700.00) Dollars."

■ Hoss and Sullens and Hoss' answer admit the sale of lumber by Purinton of more than the $2,700 in value and claim the amount due was paid by them to Purinton. Appellants offered testimony that Purinton so had been paid for the lumber and Purinton testified he had not been paid. The court submitted to the jury the question whether Purinton had been paid for the lumber. The jury was entitled to accept Purinton's testimony that he had not been paid and to award the damages claimed in the complaint.

The judgment on the two verdicts is affirmed.

POPE, Circuit Judge (dissenting).

Basic to my line of reasoning is the finding in this case, which is the law of the case, that Timber, Inc. was merely the alter ego of Hoss; that this supposed corporation was only a shell and that not only this but the other corporation as well were mere conduits for Hoss' own business. The judgment against Hoss individually is based upon this finding that it was Hoss who was doing all these acts and carrying on all this business. This finding is reflected in the judgment against Hoss individually for holding him personally could be sustained on that ground only.

It follows from this that when Purinton, the plaintiff, entered into the saw-mill and lumber operation he was dealing in truth and in fact with Hoss who was the real party to the arrangement, although the latter purported to utilize the names of these corporations merely as a false front. It is therefore my opinion that since the judgment proceeds upon the theory that this was an arrangement between Purinton and Hoss, it must be considered as an arrangement between two individuals. Whether the named corporations did or did not comply with the various Alaska statutes for filing and paying the fees is therefore beside the point because whether the corporations could or could not in a proper case make a valid contract, it is not the claim of plaintiff that they did make this contract. On the contrary it is his claim that he contracted with Hoss individually.

Now for the purposes of this record it must be taken that there was a written agreement executed by Purinton. This was received in evidence but ruled void by the court. Purinton's theory was that he had a right to declare this contract null and void because Timber, Inc., with whom it was executed, had not complied with the statute. But it is my view that plaintiff cannot ride his horse both ways. His own theory is, as accepted by the trial court, that his dealings were with Hoss, an individual, using the name Timber, Inc., as his alter ego, or as merely another name for himself. Therefore under this theory whether as a corporation Timber, Inc. might or might not have made such a contract is immaterial here because it is neither alleged nor found that it did make such a contract. Under the findings the only person who

made the arrangements was Hoss individually. Now when that written agreement is examined it will be found that it was a rather carefully drawn arrangement for a joint venture between plaintiff on one hand and Hoss on the other, plaintiff to operate the sawmill, hire help and get $60 per thousand board feet of lumber. This $60 he was to divide into certain named proportions: $17 to the logger, $2.00 to the Forest Service, $3.33 to fuel, etc., charges, and certain units of the final $18.83 to go to plaintiff and other workmen in full for their services.

This was an apparently valid joint venture agreement so far as plaintiff and Hoss were concerned, and if it was thus executed Purinton has no ground for complaint. Assuredly he cannot sue his joint venturer otherwise than in equity for an accounting, and the record would seem to indicate that he got all he was entitled to under that contract. It is true that there was some effort on the part of Purinton to claim that this written agreement which admittedly he signed was not executed in good faith, but was a mere sham to deceive creditors of Hoss and to make them believe that the sawmill would keep operating as a going enterprise. Under the better rule such claim of sham is not a defense to a written agreement of the kind here involved when the effort is to show that the writing was designed to deceive third persons. As stated by the Supreme Court of Montana, Higby v. Hooper, 124 Mont. 331, 221 P.2d 1043, 1053, "The law does not allow parties to a contract to show that it was got up as a sham to deceive and defraud." In so holding that court was following the views of Mr. Wigmore. See Wigmore on Evidence, 3d edition, § 2406, Vol. 9, p. 18.

It is true that some courts have disagreed with Mr. Wigmore and with Montana and the other courts which follow the Montana rule but even if the contrary rule should be accepted here for Alaska it would not help the plaintiff in this case for before it could be said that the contract was a sham, evidence on both sides would have to be received, and there would have to be a finding of fact. Of course no such issue was before the jury in this case for the court would not permit the jury to consider the written contract for reasons which I have previously indicated were completely irrelevant. I favor the adoption of Wigmore's view that a contract of this kind cannot be impeached as sham.

As is apparent from a reading of the majority opinion, there have been inserted three paragraphs, immediately preceding the discussion of the testimony of Hoss' former wife, in an effort to counter the position which I have here stated. That efforts lacks logic or reason.

The judgment against Hoss individually is not based on any provision of any Alaska statute. Neither § 36–1–122, relating to filing of annual reports, nor any other section, provides that for non-compliance, the stockholders or incorporators shall be individually liable. Hoss' individual liability was based, under the court's instructions, upon a finding that Timber, Inc. did not really function as a corporation, but was a "mere conduit" for Hoss' own business. It followed then, that the dealings were those of Hoss, individually, acting through his "alter ego". But what dealings were they? The dealings were those stated in writing, in the so-called Master Contract, a contract for a joint venture. In line with what became the law of this case, if a shell of a corporation like Timber, Inc. agreed to buy a carload of apples, its sole owner could be held liable upon that agreement, but he would hardly be liable upon a court-manufactured agreement to buy a carload of coal. The only contract Purinton had was one of joint venture. Granted that Hoss is liable on that, how can he be held liable for sums which neither he nor anyone else ever agreed to pay? Because the arrangement with Purinton was an express one, with definite and explicit terms, the attempt to make Hoss liable on some entirely different obligation is wholly without legal basis.

The judgment should be reversed.