**Francis Juanita SMITH, by her guardian, Dennis R. SMITH, Appellant,**

v.

**MARCHANT ENTERPRISES, INC., Industrial Indemnity Company of Alaska, Inc., and Alaska Workers' Compensation Board, Appellees.**

No. S–3060.

Supreme Court of Alaska.

April 27, 1990.

Peter W. Giannini, Law Offices of Giannini & Associates, Anchorage, for appellant.

Mark L. Figura, Rose & Figura, Anchorage, for appellees.

## OPINION

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

MATTHEWS, Chief Justice.

Appellant Juanita Smith seeks to have reversed the superior court's dismissal of her Workers' Compensation Board decision. She asserts that contrary to the superior court's decision, her claim against one party is not inconsistent with her settlement with another party. We reverse the decision of the court below and remand for a hearing on the merits of Smith's appeal.

### I.

Smith was employed by Glacier Sales Ltd. (Glacier), and allegedly by Marchant Enterprises Inc. (MEI) as well, as a sales representative selling a variety of goods, including jewelry, souvenirs and decorated T-shirts. Her employment required visiting various businesses throughout south-central Alaska. In November 1983, Smith suffered severe injuries in an automobile accident in Soldotna, where several of her buyers were located.

Smith's conservator filed with the Workers' Compensation Board a claim against 1) Glacier, an uninsured corporation, 2) MEI, an insured corporation, and its insurance carrier, Industrial Indemnity Company of Alaska, Inc. (Industrial), and 3) two individuals, Jack Stockton and Richard Marchant, who each owned approximately half of Glacier's shares and were its officers. Marchant was also the chief officer of MEI; he and his wife each owned half of MEI's shares.

Prior to the Board hearing, Smith and Stockton reached a Board-approved settlement. At the hearing, the Board found that Smith was a Glacier employee and that the accident had occurred in the course and scope of her employment. Glacier, therefore, was found liable for compensation and benefits owed to Smith. The Board also determined that Marchant had the implied authority to insure Glacier's workers' compensation liability. Having failed to maintain insurance for Glacier, Marchant was held personally liable.

MEI was found not liable. At the Board hearing, Smith had presented arguments for MEI liability based on the close ties between MEI and Glacier and MEI and Smith. Under the theories argued, MEI and Glacier could be held jointly or severally liable for Smith's claims. Following the Board's decision, Smith and Marchant executed a Board-approved "Partial Compromise and Release" under which Marchant paid Smith $245,000 and agreed not to appeal the decision regarding his personal liability. The document states that settlement "in no way constitute[s] any statement, admission, or position of [Marchant or Glacier] with respect to the liability ... of [MEI]...." It further states that this "Compromise and Release shall not discharge any liability or obligation of [MEI] or [Industrial]."

Smith subsequently filed her appellant's brief in superior court, alleging substantial-

ly the same bases for MEI liability as those argued before the Board. Industrial and MEI filed a motion to dismiss on the grounds that, by accepting Marchant's settlement, Smith had accepted the benefits of the Board's decision and was therefore estopped from pursuing her appeal. The superior court granted Industrial's motion stating:

> [MEI and Industrial] have moved the court to dismiss this appeal on the ground that appellant is estopped to continue prosecuting the appeal because she accepted the benefits of the Compensation Board decision of which she seeks review. Good cause appearing therefore, the motion is granted. Appellant cannot enforce the Workers' Compensation Board order and collect $245,000 from E.Z. Marchant on the basis that there was no compensation insurance, then prosecute an appeal claiming that compensation insurance was provided.

## II.

This case presents but one issue. Did the court below correctly apply quasi estoppel to Smith's appeal? That is, does Smith's appeal raise claims inconsistent with the Board's decision and subsequent enforcement by settlement?

Smith makes three claims. First, Smith alleges that MEI and Glacier were her "joint employers." Under this doctrine, an employee is considered to have joint employers when she "simultaneously engages in work for more than one employer and the work performed for each employer is identical or nearly identical to that performed for the other employer." *Laborers & Hod Carriers Union v. Groothuis*, 494 P.2d 808, 813 (Alaska 1972).

Very similar is the doctrine of "dual employment" which occurs when "an employee of two employers who is under the separate control of each performs services which are more closely related to the business of one than of the other." *Id.* Both doctrines trigger joint liability except when, with regard to dual employment, "it is possible to ascribe the service of the employee at the time of his injury or death to a particular employer...." *Id.*

The final doctrine pled by Smith is the doctrine of "corporate disregard." Here, Smith would have to demonstrate that MEI and Glacier were so closely intertwined that they do not merit separate treatment. *Husky Oil N.P.R. Operations, Inc. v. Sea Airmotive, Inc.*, 724 P.2d 531, 534 (Alaska 1986) (applying corporate disregard doctrine to "brother/sister corporations," which share a common nucleus of shareholders); *see also, Jackson v. General Electric Co.*, 514 P.2d 1170 (Alaska 1973) (applying doctrine to "parent/subsidiary corporations").

Industrial argues that Smith took advantage of the Board's finding that Marchant was personally liable in order to obtain a lucrative settlement. As Marchant was held personally liable for failing to obtain workers' compensation insurance for Smith, and as settlement was obtained on the basis of that holding, Smith should be estopped from now arguing that she was covered by the workers' compensation insurance that Marchant had obtained for MEI.

The doctrine Industrial relies on was explicitly adopted by this court, under the rubric of "quasi estoppel," in *Jamison v. Consolidated Utilities, Inc.*, 576 P.2d 97 (Alaska 1978). The doctrine applies where the "existence of facts and circumstances mak[es] the assertion of an inconsistent position unconscionable." *Id.* at 102. The doctrine has been described as serving two functions. First, the doctrine protects the "sanctity of the oath." *See Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C.Cir. 1980). Second, it "protect[s] the integrity of the judicial process." *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598 (6th Cir.1982). *See* Comment, "Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel," 80 Nw.U.L.Rev. 1244, 1245 (1986). The first consideration focuses our attention on the consistency of the pleadings and evidence offered by the party to be estopped, the second on the involvement of the courts in promoting or permitting inconsistent results. Neither

applies here. Smith has not contradicted herself, and the settlement with Marchant rebuts concerns about the integrity of the process.

Smith originally took two positions: (1) *Marchant* was personally liable for Glacier's lack of insurance because he had the authority to obtain it; (2) *MEI's insurance* could be construed to cover Smith because MEI was Smith's joint/dual employer, or alternatively, because Glacier's separate corporate status should be disregarded. The Board found the former argument persuasive and the latter not. The Board could have decided in Smith's favor on both. The two arguments are not based on inconsistent pleadings or inconsistent evidence.

This is immediately evident with regard to Smith's joint/dual employer claims as they require evaluating only Smith's connection to MEI and Marchant. Marchant's personal liability for Glacier's workers' compensation coverage is completely irrelevant to these issues.

To say that Smith's claim against Marchant is not inconsistent with her corporate disregard claim is less obvious, but not less accurate. Much of the evidence introduced by Smith regarding Marchant's involvement with Glacier supports finding Marchant personally liable and indicates Glacier's separate corporate status was merely formal.[1] But mere formal existence could trigger Glacier's—and thereby Marchant's—liability. Glacier was registered as a corporation under Alaska law. It therefore has the legal duty to maintain workers'

compensation insurance. The legislature sought to strongly promote corporate compliance with the workers' compensation statute by making those with the authority to ensure that their corporation complies with this law personally liable if it does not.[2] The Board found Marchant to have the authority to insure Glacier. He did not exercise this authority and therefore was found personally liable. The fact that he had succeeded in fulfilling this duty as an officer of MEI is irrelevant to his failure to do so for Glacier.

Even were Glacier ultimately determined to be MEI's alter ego, Glacier would still have had a duty to maintain its own workers' compensation insurance. Indeed, the Board would look behind the corporate veil precisely because such coverage is lacking. That is, corporate disregard might apply not because Marchant had fulfilled his duty but only because he has not. If the Board had determined that the uninsured corporation was the alter ego of the insured one, that would not imply that the uninsured corporation was rightfully without insurance, or that Marchant was not liable.

In short, nothing in the Board's decision makes Smith's settlement with Marchant inconsistent with appeal of the decision favoring MEI. None of Smith's pleadings or evidence support personal liability inconsistent with application of Smith's alter-ego doctrine. Thus, the first of our two policy considerations, "the sanctity of the oath," does not apply here.

*Hoss v. Purinton,* 229 F.2d 104 (9th Cir. 1955), *cert. denied,* 350 U.S. 997, 76 S.Ct.

---

1. For example, Smith introduced into evidence a Glacier tax document that was signed by Marchant. Marchant's signing the documents supports the contention that he had authority to obtain insurance. It also supports application of the corporate disregard doctrine.

2. At all relevant times, AS 23.30.075(b) stated:
    An employer who fails to insure and keep insured employees subject to this chapter or fails to obtain a certificate of self-insurance from the board, upon conviction, is punishable by a fine of $1,000, or by imprisonment for not more than one year, or by both. *If an employer is a corporation, all persons who, at the time of the injury or death, had authority to insure said corporation or apply for a certif-*

*icate of self-insurance, and the person actively in charge of the business of such corporation shall be subject to the penalties prescribed herein and shall be personally, jointly, and severally liable* together with the corporation for the payment of all compensation or other benefits for which the corporation is liable under this chapter if said corporation at such time is not insured or qualified as a self-insurer.
(Emphasis added)
    This statute has since been modified. From July 1, 1988, conviction for failure to insure engenders a mandatory $10,000 fine. In addition, the court may impose imprisonment for up to one year.

547, 100 L.Ed. 861 (1956), is an instructive case in which the question presented was whether estoppel should apply where a statutory remedy overlaps one available under equity's alter-ego doctrine. Sullens & Hoss Inc. (S & H) was a closely held corporation with the two named persons its only shareholders and officers. Purinton entered a contract with Timber, Inc., which was owned jointly by Hoss and S & H. The contract provided that, in exchange for money advanced to Timber, Inc., Purinton would receive a share of its profits. Purinton brought suit to recover the amount he had advanced. He alleged that the contract was voidable at his will on the strength of a territorial statute requiring corporations to file annual reports; if they failed to do so, all contracts made in Alaska with Alaskan residents were voidable. Timber, Inc. had failed to file reports, and the trial court had instructed the jury that the contract had been effectively voided by Purinton. *Id.* at 107.

Purinton also sought to hold Hoss and S & H liable for the amount advanced. Hoss argued that this was inconsistent with Purinton's position as to voidability. The alleged inconsistency was described by the Ninth Circuit as asserting, on the one hand, "a right to avoid the joint venture contract with Timber, Inc., on the ground that it had failed to file the required annual reports" and, on the other hand, "a right to a personal judgment against Hoss on the ground that Timber, Inc. was only his alter ego." *Id.* at 108. The court held:

> There is no inconsistency. Such a suggestion ignores the reasons for the doctrine of looking through the corporate entity and for the penalty imposed by the Alaska statute for failure to file annual reports.
>
> The suggestion assumes that either the corporation exists or does not exist for any and all legal purposes. This is not so.... The Timber, Inc.–Purinton joint venture contract was voidable under Alaska law. Hoss cannot assert that Timber, Inc. did not exist and therefore

was under no obligation to file reports. Hoss selected this method of operating his business and must take the consequences. On the other hand, the jury was free to award a judgment against Hoss to avoid the injustice of allowing him to hide behind the undercapitalized corporate entity of Timber, Inc.....

*Id.*

*Purinton* supports our conclusion. Just as it was not inconsistent for Purinton to attack the joint venture contract as voidable and still collect a personal judgment against Hoss on alter-ego grounds, Smith may settle with Marchant on the grounds that Marchant failed to adequately insure Glacier and still seek a judgment against MEI and Industrial Indemnity under the joint or dual employer theory or the corporate disregard theory. Smith's recovery from Marchant under the Workers' Compensation statute is not inconsistent with asserting her equitable claim to pierce Glacier's corporate veil. Her oath is unimpaired.

The second policy consideration when considering quasi estoppel, preserving the "integrity of the judicial process," also does not apply here. The Board-approved settlement *released* Marchant from liability. Marchant did not admit personal liability. Moreover, the settlement explicitly reserved Smith's claim against MEI. Marchant agreed not to appeal the finding of liability, and paid less than Smith's total claim.[3] Board approval of the settlement "constitutes a decision of the [Board] and is the equivalent of an award by the [Board]." *See Department of Transportation v. Grawe*, 113 Ill.App.3d 336, 69 Ill.Dec. 250, 447 N.E.2d 467, 472 (1983); *see also*, 3 A. Larson, *The Law of Workmen's Compensation* § 82.60 at 15–1225–27 (1983). Thus, the settlement effectively displaced the Board's finding that Marchant was personally liable.

### III.

In summary, Smith offered no inconsistent evidence or pleadings. Nor, in light of

---

**3.** There appears to be no dispute that Smith is entitled to workers' compensation benefits well in excess of the settlement amount.

*Hoss v. Purinton*, does the fact that her equitable remedies overlap with her statutory ones make her claims inconsistent. Smith therefore has preserved the sanctity of her oath. Moreover, the Board's approval of the settlement releasing Marchant displaced the earlier finding of personal liability. Thus, in the event Smith were successful in demonstrating MEI's liability, there is nothing such a decision could be inconsistent with. The integrity of the process would remain intact. In short, quasi estoppel does not apply to Smith's claims.

REVERSED and REMANDED for further proceedings.