[No. 34431. Department Two. May 29, 1958.]

LYLE CRITZER, *Appellant,* v. EDWARD W. OBAN et al.,
*Respondents.*[1]

*Alexander Wiley,* for appellant.

*Ostrander & Van Eaton,* for respondents.

[1]Reported in 326 P. (2d) 53.

DONWORTH, J.—This action was brought by a creditor of a bankrupt corporation to recover from its stockholders the amount owed him. The theory set forth in his complaint was that the defendants, as stockholders, had deceived him and induced him to sell goods to the corporation under such circumstances as to justify a holding that the corporate existence must be disregarded as merely the alter ego of the defendants' partnership.

The defendants Oban and wife and Robert W. McLaughlin, for several years prior to the transactions involved in this action, had been copartners engaged in the business of operating a chicken hatchery at Kirkland, Washington, under the name of Oban's Hatchery. The fourth defendant, Grace M. McLaughlin, wife of Robert W. McLaughlin, was not a member of the partnership. Mrs. Oban is Mr. McLaughlin's sister.

In 1952, these defendants were sole stockholders in a Washington corporation which was not then conducting any business. They changed the corporate name to Oban's Hatchery, Inc., and qualified it to engage in business in California. The corporation started a hatchery in Fresno, California, and operated it at a loss from 1952 to 1954, when it ceased doing business. In 1955, the corporation filed its petition in bankruptcy and was adjudicated a bankrupt. During this period (1952-1954), Mr. McLaughlin and his wife lived in Fresno, where he was in charge of the corporation's business in his capacity as vice-president and resident manager. He received a salary of three hundred dollars per month.

In 1953, the partnership placed several orders for hatching eggs with plaintiff, who operated a hatchery in Pratt, Kansas. These shipments were received at Kirkland and paid for by partnership checks drawn on a Kirkland bank. Shortly after the first shipment was received by the partnership, the corporation (after Mr. McLaughlin learned from Mr. Oban that plaintiff had eggs available) also ordered eggs from him by telephone. Correspondence with plaintiff concerning this and subsequent orders was on the letterhead of Oban's Hatchery (Incorporated), 1949 south

Van Ness avenue, Fresno, California, and signed by Mr. McLaughlin as vice-president. Plaintiffs shipped eggs to the corporation at Fresno during 1953 and 1954, and received in payment its checks drawn on a Fresno bank.

The indebtedness involved in this case ($4,032.41) arose from sales of eggs by plaintiff to the corporation in May and June, 1954, made under the same circumstances as described above, except that this balance owing on account thereof was never paid.

Other facts relating to relationship and dealings between the partnership and the corporation, and to plaintiff's transactions with them, will be referred to later in this opinion.

At the trial, plaintiff testified by deposition, and three of the four defendants testified in person. Some twenty-eight exhibits, bearing on transactions between both parties and the corporation, were admitted in evidence. The trial court, at the close of the evidence and arguments of counsel, announced its decision in favor of defendants. From its judgment dismissing the case, plaintiff has appealed.

Appellant assigns error to the entry of finding of fact No. 16, and to the refusal of the trial court to make seven findings proposed by him, and to the dismissal of his action.

At the outset of his argument in his brief, appellant states his position as follows:

"This appeal is not predicated upon any alleged error of the trial court in deciding disputed questions of fact; but is based entirely upon the error of the trial court in not properly evaluating facts expressly admitted by the defendants and facts upon which there was no controverting evidence.

"Appellant contends that Oban's Hatchery, Inc., was the mere instrumentality, agent and conduit of defendants doing business as Oban's Hatchery, a partnership, for the following reasons:

"First. The letterheads, invoices and names of the corporation and partnership were deceptively similar to each other. This similarity, coupled with the fact that both transacted the same kind of business, the home office of the two was the same, and the corporation's activities were merely an extension of the business of the partners, would constitute a constructive fraud upon the creditors of the corporation.

"Second. Defendants as sole stockholders and officers of the corporation launched it into a highly competitive and hazardous business with no capital at all and no assets except money it borrowed from its stockholders; and permitted the corporation, while it was insolvent, to continue to do business at the risk of its creditors for nearly three years—all with the hope of benefiting the partners.

"Third. Defendants as sole stockholders and officers of Oban's Hatchery, Inc., completely dominated every act of the corporation for the benefit of the partners and not of the corporation. Most of the business of the corporation was done with the partners. The business of the two alleged entities was intermixed by dealings with each other and business transactions between the corporation and its officers and the relatives and wives of its officers."

Referring to appellant's first contention, the trial court found that the letterheads and names of the partnership and the corporation were similar to each other. There was no finding that they were deceptively similar. On the contrary, in finding No. 16 (which is assigned as error), the court found:

"That none of the defendants has attempted to mislead or deceive the plaintiff in regard to the credit standing, resources, operation, management, responsibility or liability on accounts of Oban's Hatchery, Incorporated. That the defendants have at all times kept clearly separate, the assets, except as otherwise stated in these Findings of Fact, resources and business entities of the partnership, at Kirkland, Washington, and the corporation at Fresno, California. That said corporation has not been used inequitably, fraudulently or unjustly by the defendants, and as a deception of creditors or a guise for defendants' personal gains at the expense of or to the disadvantage of any creditor of the corporation."

There was a conflict between appellant's testimony in his deposition and that of respondent Oban as to their telephone conversation which led to (or at least preceded) appellant's initial sale of eggs to the corporation. This testimony was material to the issue of deception. The trial court resolved this conflict against appellant. Since we cannot say that the evidence preponderates against finding No. 16,

we therefore accept it as correctly stating the facts set forth therein.

In his reply brief, appellant asserts, for the first time, that the first sentence of finding of fact No. 16 is not supported by evidence of any kind. We cannot agree with this statement, because the record contains evidence, which is reflected in the other fifteen findings made by the trial court (which are not challenged), which supports the finding that respondents made no attempt to mislead or deceive appellant.

It is further stated in the reply brief that the last sentence of finding No. 16 is a conclusion of law that the corporation has not been used inequitably or fraudulently by respondents, and as a deception or a guise for their personal gain at the expense, or to the disadvantage of, any creditor. Even if this sentence be regarded as a conclusion of law, as such, it is fully supported by the other findings, and appellant is not aided by so considering it.

Our decision in *Associated Oil Co. v. Seiberling Rubber Co.*, 172 Wash. 204, 19 P. (2d) 940 (1933), is cited by appellant as "almost conclusive" on the issue of fraud in use of the corporate entity. In that case, the trial court found that the two corporations having identical names had perpetrated a constructive fraud upon the plaintiff by the parent corporation's surreptitious delivery of a written guaranty signed by the wholly owned subsidiary corporation. This court affirmed, saying:

"The evidence well establishes that respondent was thoroughly misled and deceived, both when it accepted the written guaranty and when it brought this action."

In the present case, the trial court found exactly to the contrary in finding No. 16. Neither the cited case nor the other legal authorities relied on by appellant are in point for the same reason.

In *Pittsburgh Reflector Co. v. Dwyer & Rhodes Co.*, 173 Wash. 552, 23 P. (2d) 1114 (1933), we said:

"In order to justify the judicial disregard of corporate identities, one, at least, of two things must clearly appear. Either the dominant corporation must control and use the

other as a mere tool or instrument in carrying out its own plans and purposes so that justice requires that it be held liable for the results, or there must be such a confusion of identities and acts as to work a fraud upon third persons. In most, if not all, of the Washington decisions in which corporate entities have been disregarded, both elements have appeared, and there is strong authority for the rule that both elements (if there be two) must appear in order to warrant relief. [Citations]"

See, also, *Seattle Ass'n of Credit Men v. Daniels,* 15 Wn. (2d) 393, 130 P. (2d) 892 (1942), wherein this rule is reaffirmed.

■ A careful review of the record in the present case convinces us that the sum of the evidence before the trial court was insufficient to sustain a finding of fact establishing either, or both, of the elements just mentioned so as to justify a judicial disregard of the corporate identity.

Appellant next argues that respondents are liable for the corporate debt (owing prior to the bankruptcy of the corporation) because, as stockholders, they caused the corporation to enter into "a highly competitive and hazardous business with no capital at all and no assets except money borrowed from its stockholders." RCW 23.08.030 requires that a Washington corporation have a minimum paid-in capital of five hundred dollars before commencing to do business.

■■ Oban's Hatchery, Inc., had an authorized capital of fifty thousand dollars, of which fifteen hundred dollars had been paid in, thereby complying with the statute. It is immaterial whether the sums which it borrowed to commence its business were, in fact, borrowed from stockholders rather than some lending institution or other person. In either event, appellant would not have been deceived by the presence or absence of sufficient paid-in capital, because he made no attempt whatever to obtain any information regarding the financial status of the corporation either before commencing to sell eggs to it, or after receiving checks and correspondence which should have put him on notice that he was dealing with it as a cor-

poration. Appellant's contention that respondents were under a duty to furnish such information is without merit.

We are in accord with many of the cases cited by appellant in which the corporate privilege has been abused, either in situations where a subsidiary corporation is formed by a parent corporation as a buffer in order to shield the parent against liability (*Associated Oil Co. v. Seiberling Rubber Co., supra*; also, Douglas and Shanks, Insulation From Liability Through Subsidiary Corporations, 39 Yale Law Journal 193), or where a corporation is nothing more than the *alter ego* of one man and is so manipulated by him as to perpetrate a fraud upon corporate creditors. (*Pepper v. Litton*, 308 U. S. 295, 84 L. Ed. 281, 60 S. Ct. 238 (1939); Fuller, The Incorporated Individual: A Study of the One-Man Company, 51 Harv. L. Rev. 1373; also, Judicial Supervision of the One Man Corporation, Notes, 45 Harv. L. Rev. 1084). But the facts of the present case, as established by the findings, do not warrant the application of those principles.

With reference to appellant's third contention, above quoted, except for the statement that most of the business of the corporation was done with the partnership, the conclusions therein stated are not supported by the findings of fact. The trial court reached opposite conclusions based on its findings, and, from our review of the record, we cannot hold that the trial court erred in any respect to which appellant has assigned error.

The burden of proving facts that would warrant the court in holding that the corporate veil should be pierced in the present case, and that respondents should be held liable for the corporate debt, was upon appellant. He simply failed to sustain that burden.

The judgment is affirmed.

HILL, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.