[No. 910-2. Division Two. May 6, 1975.]

THEODORE BURNS, JR., *Respondent*, v. NORWESCO MARINE, INC., *et al*, *Defendants*, JOHN WARNOCK *et al*, *Appellants*.

*John M. Warnock,* pro se.

*Gary H. Sexton, Ronald R. Pinckney,* and *Walgren & Sexton, Inc., P.S.,* for respondent.

PEARSON, J.—John Warnock appeals after having judgment entered against him on a promissory note executed in favor of the respondent, Dr. Theodore Burns. Warnock's codefendants, Norwesco Marine, Inc., Astron Boats, Inc., and Phil and Sandra Warnock, defaulted from this action. The facts are briefly set out below. Further details will be presented as they become relevant to the several issues in this case.

Norwesco Marine, Inc., was in the business of building, repairing and selling boats. John Warnock was the president, incorporator, and shareholder in Norwesco Marine, and acted at times as its legal counsel. Phil Warnock, who is John Warnock's son, was also an incorporator of Norwesco Marine and served as its general manager. Norwesco Marine was not a profitable enterprise. In fact, at the time this lawsuit was commenced, it was in debt for approximately $40,000 and had few assets.

In February of 1971, Dr. Burns contracted with Norwesco Marine and Phil Warnock for the construction of a jet-propelled boat. Dr. Burns traded a used boat and trailer for the down payment, but did not deliver the boat's documents. Dr. Burns testified that Phil Warnock promised him delivery of the new boat within 3 to 5 weeks. The delivery deadline was not met. Dr. Burns made numerous inquiries during the following 2 months and was repeatedly promised by both John and Phil Warnock that the boat would be

ready at any time. Meanwhile, the used boat traded by Dr. Burns was sold, despite the fact that Dr. Burns was holding the documents for security. The proceeds from the sale were apparently used to pay off corporation debts. His patience exhausted, and with the summer boating season imminent, Dr. Burns demanded in the latter part of May 1971 a refund of the value of the traded boat. He settled for a promissory note, executed on May 29, 1971, by John Warnock, in his capacity as president of Norwesco Marine, for the amount of $4,500. A lump-sum payment was promised on June 7, 1971. Dr. Burns subsequently purchased a jet boat from another dealer. Suit on the promissory note was filed on June 11, 1971. The primary issue at the August 1972 trial was whether there were facts and circumstances which would justify piercing the corporate veil of Norwesco Marine so that John Warnock could be held personally liable on the note. The trial court held that there were, and accordingly a judgment in the amount of $4,500, plus $1,500 for attorney's fees, was entered. We affirm.

Warnock has made numerous assignments of error in his appeal, which can be reduced to four issues. First, Warnock contends that the trial court should have disqualified itself after having been presented with an affidavit of prejudice. However, several months prior to being presented with the affidavit, the court had made three rulings in the case, some of which required the exercise of discretion. Thus Warnock's right to demand a change of judges was lost. RCW 4.12.050. *See In re McDaniel*, 64 Wn.2d 273, 391 P.2d 191 (1964).

The second issue concerns a motion for a continuance made by Warnock, which was denied because of his failure to attend the hearing on that motion. On the date of the trial Warnock requested the court to reconsider its ruling, explaining that he was absent because of a hospital examination which he characterized as an "emergency." However, Warnock failed to present the court with a physician's statement or affidavit or any other proof verifying

the reason for his absence. Thus it cannot be said that the court abused its discretion by refusing to grant the continuance. *State v. Miles*, 77 Wn.2d 593, 464 P.2d 723 (1970); *State v. Larson*, 12 Wn. App. 781, 532 P.2d 638 (1975).

Warnock next contends that plaintiff's counsel, Gary Sexton, should have been disqualified for conflict of interest. Warnock alleges that Sexton had been retained by Norwesco Marine to foreclose a lien on an automobile in 1970 and that the automobile was sold but title had never been perfected. Warnock reasons that Norwesco Marine was and still is a client of Sexton, and therefore should be automatically disqualified. Sexton, in a statement to the trial court, denied these charges and stated that he merely prepared an affidavit for Norwesco Marine which related to an automobile foreclosure.

Even assuming that Warnock's version of the facts is true, they are not sufficient to convince us that at the time Sexton was retained by the plaintiff he owed any further duty to Norwesco Marine. And in view of Sexton's denial of the allegations made by Warnock, the trial court was justified in inferring that Norwesco Marine was a former client (as opposed to a present client) of Sexton. The issue of Sexton's disqualification therefore falls within the rule of *Kurbitz v. Kurbitz*, 77 Wn.2d 943, 468 P.2d 673 (1970). There the Supreme Court held that an attorney who represented a party in a former matter should be disqualified from representing the opposing party when: (1) the present suit is substantially related to the former matter; or (2) the attorney had access to confidential information material to the present suit. *See also National Bank of Commerce v. Fountain*, 9 Wn. App. 727, 514 P.2d 194 (1973); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265 (S.D.N.Y. 1953); Annot. 52 A.L.R.2d 1243, § 3, at 1247 (1957).

It is clear that this suit has nothing to do with the lien foreclosure. Further Warnock has not presented any evidence or even made any allegations that Sexton had access

to confidential information material to the present suit. Therefore the trial court did not err by refusing to order Sexton disqualified to represent Dr. Burns.

The fourth issue concerns the trial court's decision to disregard the corporate existence of Norwesco Marine and hold John Warnock personally liable.

 The corporate form is of course frequently utilized to limit the personal liability of its officers, directors and shareholders. And as a general rule, the corporate entity will be respected by the courts. There are circumstances, however, in which the corporate form has been so abused that, in order to do justice, the corporate personality will be disregarded so long as the rights of innocent third parties are not prejudiced. *Superior Portland Cement, Inc. v. Pacific Coast Cement Co.,* 33 Wn.2d 169, 205 P.2d 597 (1949). Although the facts have varied from case to case, the corporate entity has been disregarded when it is used to perpetuate a fraud or wrong, gain an unjust advantage or evade an obligation. *Allman Hubble Tugboat Co. v. Reliance Dev. Corp.,* 193 Wash. 234, 74 P.2d 985 (1938); *Associated Oil Co. v. Seiberling Rubber Co.,* 172 Wash. 204, 19 P.2d 940 (1933); *Pacific Fruit & Produce Co. v. Modern Food Stores, Inc.,* 158 Wash. 212, 290 P. 859 (1930); *Barnard Mfg. Co. v. Ralston Milling Co.,* 71 Wash. 659, 129 P. 389 (1913); *Harrison v. Puga,* 4 Wn. App. 52, 480 P.2d 247, 46 A.L.R.3d 415 (1971). *See J.I. Case Credit Corp. v. Stark,* 64 Wn.2d 470, 392 P.2d 215 (1964); C. Horowitz, *Disregarding the Entity of Private Corporations,* 14 Wash. L. Rev. 285 (1939), 15 Wash. L. Rev. 1, 15-16 (1940); 1 F. O'Neal, *Close Corporations* § 1.09 (a) (1971).

Frequently this occurs when the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist. *Kueckelhan v. Federal Old Line Ins. Co. (Mut.),* 69 Wn.2d 392, 418 P.2d 443 (1966); *J.I. Case Credit Corp. v. Stark, supra; W.G. Platts, Inc. v. Platts,* 49 Wn.2d 203, 298 P.2d 1107 (1956); *In re Estate of Trierweiler,* 5 Wn. App. 17, 486 P.2d 314 (1971).

Moreover, in some jurisdictions, directors and officers of a corporation may be held directly liable to corporate creditors for breaches of duty owed to the corporation, especially during the corporation's insolvency. This may include acts of neglect. 19 C.J.S. *Corporations* § 846 (1940).

This may also be the case in Washington, where the holding of *Harrison v. Puga, supra,* allows a disregard of the corporate entity as a matter of convenience, *e.g.,* in order to avoid circuitous action that would occur were the creditor forced to obtain judgment against the corporation, and then have a receiver appointed to take action against the officers and directors in order to collect damages arising from their breaches of duty.

John Warnock argues he should not be held personally liable to Dr. Burns because he was not active in the affairs of the corporation. He contends that he was only nominally president; that his son Phil was solely responsible for the management of Norwesco Marine; that he adopted a posture of benign neglect during the company's earlier period of operation; and that he only stepped in as a benefactor, paying off debts when it became obvious that the corporation, and possibly Phil, were in serious trouble.

There is considerable evidence, however, that John Warnock was active in the affairs of the corporation, especially during its period of insolvency, and that he knew of and either participated in or acquiesced to acts of wrongdoing committed in the corporate name. He was aware that his son had obtained credit from lending institutions without disclosing the company's insolvency, and that his son was writing numerous worthless checks. John Warnock held himself out to anxious creditors as a person in charge of the company. He covered bad checks and paid employees out of his own pocket. In his capacity as president of Norwesco Marine, he executed a promissory note payable to a bank for the purpose of repaying funds overdrawn by his son on the corporate account held with that bank, without informing the bank of Norwesco Marine's insolvency. There is other

evidence that John Warnock obtained credit from a lending institution under questionable circumstances. Additionally, it appears that John Warnock assisted his son in setting up a new corporation, Astron Boats, Inc., for the purpose of continuing Norwesco Marine's operations without being encumbered by its liabilities.

It also appears that both John and Phil Warnock did not themselves respect the corporate entity of Norwesco Marine and conducted its affairs as a personal enterprise. Title to most of the assets used by the corporation was held in the name of either Phil or John Warnock and the latter, as president, did not know whether the $5,000 provided in the articles of incorporation as paid-in capital had in fact been paid.

With respect to Dr. Burns' complaint, John Warnock on numerous occasions reassured Burns that his new boat would be completed soon, when in fact it was not. He held himself out to Dr. Burns as a person in charge of the company's affairs with the authority to speak. John Warnock participated in the sale of Dr. Burns' trade-in boat to a third party by drawing up and notarizing the bill of sale. Finally, he executed the promissory note to Burns on behalf of the corporation without informing Burns of the corporation's insolvency.

Thus it appears from the evidence that at best John Warnock was guilty of gross neglect of his duty to the corporation, and at times he actively participated in acts of wrongdoing. The latter is true of his dealings with Dr. Burns. Additionally, John Warnock himself disregarded the corporate personality of Norwesco Marine and so he should not be heard to complain of the trial court's determination. Piercing the corporate veil in this case will avoid a circuitous receivership method and is necessary to a just result.

Affirmed.

PETRIE, A.C.J., and RUMMEL, J. Pro Tem., concur.

Petition for rehearing denied June 23, 1975.

Review denied by Supreme Court November 12, 1975.