[No. 5753–1. Division One. December 11, 1978.]

BESSIE GRAYSON, ET AL, *Respondents,* v. NORDIC CONSTRUCTION COMPANY, INC., *Defendant,* ARNOLD BERGSTROM, ET AL, *Appellants.*

*Reseburg & Reseburg* and *Walter J. Reseburg, Jr.,* for appellants.

*Young & Cole, Inc., P.S.,* and *Richard T. Cole,* for respondents.

DORE, J.—Defendant Arnold Bergstrom appeals a judgment holding him personally liable to the plaintiffs for breach of a contract which called for repair work on plaintiffs' home. The contract had been negotiated by plaintiff Bessie Grayson and the Nordic Construction Co., Inc. (Nordic). Bergstrom contends on appeal that the trial court erred in piercing the corporate veil, to establish personal liability.

## FACTS

In 1974, Bessie Grayson lived with her mother, Evelyn Grayson, in a house owned by Evelyn and her husband, Amos Grayson. In the summer of 1974, Bessie Grayson received a flier in the mail from Nordic. The flier advertised home remodeling and repair work and stated: "financing available." In response, Bessie Grayson telephoned Nordic and spoke with Bergstrom regarding repair of a leak in the roof of the Grayson house. The plaintiff and the corporation entered into a written agreement on August 24, 1974, for the repair of the roof, gutters and downspouts of the house for the amount of $2,053.35.

Bergstrom attempted to obtain financing for the plaintiffs through a bank with which he had dealt in the past. However, the bank would not approve the financing. Other attempts to obtain financing were made but were equally unsuccessful. Bergstrom eventually agreed to finance the repair work himself by agreeing to a method of payment

under which work would be commenced upon a $300 initial payment, with subsequent monthly payments of $50. Bessie Grayson paid the $300. The agreement was that, upon receipt of $400, Bergstrom would complete the work. Bessie Grayson made payments totalling $450, but the work was never completed.

Over a period of almost a year, work crews from Nordic periodically worked on the Grayson house, but failed to repair the leaking roof and complete the contract, causing further damage to the house.

In August of 1975, Amos Grayson received letters from Bergstrom indicating that he could not continue to personally finance the work, and that he needed an additional $1,000. At that point in time the Graysons directed a letter to Bergstrom, advising that he and his company had breached their contract. The Graysons then hired another contractor who completed the work at a cost of $4,702.79.

At trial, the court found that Bergstrom breached the parties' contract and that he violated RCW 19.86.020 relating to unfair trade practices. The court entered judgment against Bergstrom in the amount of $3,099.44 for breach of contract and awarded the Graysons attorneys' fees in the amount of $500 pursuant to RCW 19.86.090.

### ISSUES

1. Did the trial court err in piercing the corporate veil of the Nordic corporation, holding its major stockholder and executive personally liable?

2. Were plaintiffs entitled to attorney fees pursuant to the Consumer Protection Law?

### DECISION

ISSUE 1.

In *Harrison v. Puga,* 4 Wn. App. 52, 62, 480 P.2d 247, 46 A.L.R.3d 415 (1971) we reviewed the rules as to disregarding the corporate entity:

> When a person deals with a corporation, he normally must enforce his rights and the corporation's corresponding duties against the corporation itself as a separate

entity. He thereby regards the corporation as a separate legal person. *Critzer v. Oban,* 52 Wn.2d 446, 326 P.2d 53 (1958). There are exceptional situations when it is nevertheless proper to disregard the separate entity of the corporation and fasten liability directly on the corporation's stockholder and in favor of the person dealing with the corporation. By so doing, the court in effect extends the scope of the duty initially owed by the corporation to the person dealing with it so as to impose liability upon the corporation's stockholder in his individual capacity. *J.I. Case Credit Corp. v. Stark,* 64 Wn.2d 470, 392 P.2d 215 (1964). The *court must do so, however, for an adequate reason.* Often the reason given is public advantage, requirements of justice, alter ego, fraud, bad faith, or other wrong.

(Italics ours.)

In the subject case, the trial court relied heavily on the closely held nature of the corporation in finding that Nordic was Bergstrom's "alter ego" thereby justifying disregard of Nordic's corporate existence. It is clear that Bergstrom made the financial decisions for Nordic and was responsible for the language and content of advertisements such as the one received by Bessie Grayson, but all his actions were consistent with being a corporate officer, because a corporation can only act through its officers and agents. The record also indicates that the advertisements were sent under the Nordic name, not Bergstrom's name, that the parties' contract was entered under the name of Nordic Construction Co., Inc., and that the checks used as contract payments were made out to Nordic not Bergstrom.

■ Even conceding the close nature of the corporation, however, that alone is not enough to justify the trial court in "piercing the corporate veil." In F. O'Neal, *Close Corporations* 1.09a (1971) the author notes at page 33 that:

Undoubtedly the likelihood that a court will disregard a corporation's legal personality in a particular situation is considerably greater if the corporation is close than if it is publicly held.

A corporation's separate legal identity is not lost, however, merely because it is closely held. *See Nursing Home Bldg.*

*Corp. v. DeHart,* 13 Wn. App. 489, 495, 535 P.2d 137 (1975). In *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 41, 182 P.2d 643 (1947) the court stated:

[A] corporation exists as an organization distinct from the personality of its shareholders. This separate organization, with its distinctive privileges and liabilities, is a legal fact, and not a fiction to be disregarded when convenient. The concentration of its ownership in the hands of one or two principal shareholders does not, *ipso jure,* dispel those corporate characteristics of the organization.

■ The law is that when the shareholders of a corporation, who are also the corporation's officers and directors, conscientiously keep the affairs of the corporation separate from their personal affairs, and no fraud or manifest injustice is perpetrated upon third persons who deal with the corporation, the corporation's separate entity shall be mandated. *Frigidaire Sales Corp. v. Union Properties, Inc.,* 88 Wn.2d 400, 405, 562 P.2d 244 (1977). There is nothing in the record to indicate that Bergstrom did not conscientiously keep Nordic's affairs separate from his personal affairs.

The only grounds, other than the close nature of the corporation, which might reveal the perpetration of a fraud or manifest injustice (thereby justifying the disregarding of Nordic's corporate existence) are the alleged consumer protection violation and Nordic's breach of contract. First, we disagree with the trial court's conclusion that Nordic violated the Consumer Protection Act; and, second, the mere breach of a contract by Nordic alone does not justify disregarding its corporate existence.

■ To constitute an unfair or deceptive trade practice under the Consumer Protection Act (RCW 19.86.020), an advertisement must have the tendency or capacity to deceive a substantial portion of the purchasing public. *Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742,

748, 551 P.2d 1398 (1976). The trial court entered a finding of fact in the subject case that Nordic's representation that "financing was available" constituted an unfair and deceptive act which had the capacity or tendency to deceive. Although the trial court denominated this a finding of fact, it is in actuality a conclusion of law and is therefore reviewable on appeal.[1] *Local 1296, Int'l Ass'n of Firefighters v. Kennewick,* 86 Wn.2d 156, 161–62, 542 P.2d 1252 (1975). We hold, as a matter of law, that such a statement did not have the tendency or capacity to deceive the purchasing public. *Fisher v. World–Wide Trophy, supra.* The statement "financing available" does not insure that financing will be obtained, but merely indicates that the advertising party will make an effort to obtain financing, which Nordic in fact did. Such a statement does not guarantee financing to those whose financial condition does not otherwise warrant it. Obviously financing is only available if bank requirements are met. We conclude that there was no violation of RCW 19.86.020.

 While Nordic's breach of contract establishes a cause of action against the corporation, standing alone it does not provide a justification for disregarding Nordic's corporate existence. Plaintiffs provide no authority, and we have found none for the proposition that mere breach of a contract by a corporation, without more, justifies disregarding the corporate entity.

We hold that the trial court erred in piercing the corporate veil and holding the defendants Bergstrom liable.

ISSUE 2.

 As a result of the trial court's conclusion that Nordic violated the Consumer Protection Act, the court granted plaintiffs attorney's fees of $500 pursuant to RCW 19.86-.090. We have previously concluded that there was no consumer protection violation. Therefore imposition of

---

[1]The trial court also entered a conclusion of law to the same effect.

attorney's fees was improper.[2]

This case is reversed and remanded to the trial court with instructions to delete the judgments against the defendants Bergstrom and enter judgment for plaintiffs against the defendant Nordic Construction Company in the amount of $3,099.44 plus statutory costs. All other parts of the judgment shall remain the same.

JAMES, J., concurs.

ANDERSEN, A.C.J. (dissenting)—I would affirm the judgment against Arnold Bergstrom based on the trial court's finding that he engaged in deceptive advertising violative of the Consumer Protection Act and 'caused damages to a householder in the sum of $3,099.44 plus $500 attorneys' fees.

Following a trial to the court at which witnesses testified and evidence was presented, the trial court entered findings of fact. The pertinent ones read:

> That Arnold Bergstrom was at all times president, manager, and a member of the Board of Directors of Nordic Construction Company, Inc. and otherwise directed, formulated, and carried out all activities of Nordic Construction Company as it relates to the Plaintiffs herein, as though the Plaintiffs were dealing with Arnold Bergstrom himself as an individual and that Nordic Construction was the alter ego of Arnold Bergstrom.

Finding of fact No. 3.

> That advertising mailers were drafted by, and directed to be sent through the U.S. mail to residents of the Seattle area by Arnold Bergstrom, Defendant, herein.

Finding of fact No. 4.

> That the plaintiff Bessie Grayson did receive advertising mailers, Exhibits 4, 5 and 6, and did, because of those mailers, contact the Defendant Arnold Bergstrom in

---

[2]As we have concluded that there was no violation of RCW chapter 19.86, the case of *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 322–23, 553 P.2d 423 (1976) relied on by the plaintiffs, is not applicable to the facts of this case.

order to have repair work done to the residence wherein she resided.

Finding of fact No. 5.

That the mailers received by the Plaintiff and sent by the Defendant Arnold Bergstrom represented that financing was available. That Nordic Construction Company and Arnold Bergstrom did not have the capabilities to finance jobs as implied by the advertising received by the Plaintiffs.

Finding of fact No. 6.

That the court finds that the advertisements representing financing are violations of RCW 19.86.020 in that they are unfair and deceptive acts and practices which have the capacity or the tendency to deceive.

Finding of fact No. 7.

That, although the court finds violations of RCW 19.86.020, the court does not feel that an award of damages is proper for that violation; but as authorized under the statute, RCW 19.86, will find that the Plaintiffs should be allowed the sum of $500.00 attorney's fees as authorized under the provisions of RCW 19.86.

Finding of fact No. 13.

In order to put the case in better perspective from the standpoint of the consumer's interest, the Consumer Protection Act issue will first be dealt with and, following that, the corporate entity issue.

First, then, with respect to the violation of the Consumer Protection Act found by the trial court.

A basic purpose of the Consumer Protection Act, RCW 19.86, is to protect the public. RCW 19.86.920. Bessie Grayson, the respondent, is a member of that public.

The act is to be liberally construed to the end that its beneficial purposes may be served. RCW 19.86.920; *Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 358, 581 P.2d 1349 (1978).

Under the act, unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. RCW 19.86.020. Here the householder, Bessie Grayson, received three advertising mailings which caused her to contact Mr.

Bergstrom to have repair work done on her residence. Finding of fact No. 5; exhibits 4, 5 and 6. One of the mailers (exhibit 5) referred to "Reasonable Financing Available" and another (exhibit 6) described the nature of such financing as "Best Financing In Years."

It was up to the trial court to decide whether this was just sales rhetoric or whether, under the circumstances, it was a material misrepresentation. The trial court did not err in construing the advertising against the advertiser, *Murray Space Shoe Corp. v. Federal Trade Comm'n,* 304 F.2d 270, 272 (2d Cir. 1962), and finding that financing, as such term is generally understood, was not available and as a consequence the advertisements were "unfair and deceptive acts and practices which have the capacity or the tendency to deceive." Finding of fact No. 7.

The advertiser's intent is not the critical issue, nor is whether the recipient was actually deceived or not. But as the trial court correctly indicated in that finding, what is critical is whether the advertisements have the "capacity or tendency to deceive." *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 317, 553 P.2d 423 (1976); *Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 748, 551 P.2d 1398 (1976). The trial court did not err in so finding here.

So far as the requirement that the transaction affect the public interest, *Salois v. Mutual of Omaha Ins. Co., supra* at 361, the advertising of the home improvement service to the public was sufficient to satisfy such requirement. *Lightfoot v. MacDonald,* 86 Wn.2d 331, 334, 544 P.2d 88 (1976); *Fisher v. World–Wide Trophy Outfitters, supra* at 748.

In order to thoroughly understand the applicability of the Consumer Protection Act to this case, it is well to reflect upon the background of that act. The Consumer Protection Act was one of several consumer protection statutes enacted by the state legislature based upon the work of the Washington State Consumer Advisory Council,

and on information developed in statewide hearings conducted by the Council. A portion of the Council's report dealing with home improvement contractors is apropos to the present case:

> Both in terms of the amounts of money involved and the number of complaints received, the home improvement contracting industry poses by far the most serious current consumer problems. . . .
>
> Examples of many of the unfair and deceptive practices employed, which reduce the purchasing power of the Washington public by millions of dollars each year, include:
>
> . . .
>
> (6) Misleading advertising;

A report to Governor Albert D. Rosellini by the Washington Consumer Advisory Council, *Consumer Protection in the State of Washington* 14 (1960).

Tragically, it is not uncommon for a householder's hopes to be raised by deceptive advertising of a marginal home repair contractor only to be dashed in a sea of broken promises, work done improperly or not at all and culminating in litigation which in most instances the householder can ill afford. This is such a case, as the trial court found.

The trial court made its award of damages to the householder in the amount of $3,099.44 based on breach of contract. It had the discretionary authority to award additional damages on the basis of the enhanced damages provision of the Consumer Protection Act, RCW 19.86.090, but in a decision based on the equities of the case declined to do so. The trial court did, however, award $500 attorneys' fees to the householder pursuant to the authority of the provision of the Consumer Protection Act so authorizing. RCW 19.86.090. That award of $500 attorneys' fees was well within the trial court's discretion. *State v. Ralph Williams' North West Chrysler Plymouth, Inc., supra* at 314.

The other issue on appeal regards the trial court's piercing of the Nordic Construction Company, Inc., corporate veil and finding Mr. Bergstrom personally liable.

Here the corporation, Nordic Construction Company, Inc., was adjudged bankrupt prior to the trial of this case.

Even though the home repair contract was ultimately entered into between the householder and the corporation (Nordic Construction Company, Inc.), the advertising on which the trial court based the Consumer Protection Act violation was *not* in the name of the corporation.

Mr. Bergstrom, in his brief filed in this court, states that "[t]here is no dispute that the mailers were sent in the name of the corporation, . . ." Brief of Appellant at 5. This is incorrect. The three mailers (exhibits 4, 5 and 6) which the trial court found were received by the householder (finding of fact No. 5) do not bear the words "corporation," "incorporated" or the designation "Inc." anywhere on them. They refer only to "Nordic Construction Co." and one of them (exhibit 6) features Bergstrom in large print, as "MR. BERGSTROM GEN./MGR. 28 Yrs." The trial court also found as a fact that the "advertising mailers were drafted by, and directed to be sent through the U.S. mail to residents of the Seattle area by Arnold Bergstrom, . . ." Finding of fact No. 4.

In addition, the trial court found as a fact that under all of the circumstances of this case, "Nordic Construction was the alter ego of Arnold Bergstrom." Finding of fact No. 3.

It is, of course, true that the corporate form is frequently properly utilized to limit the personal liability of corporate officers, directors and shareholders and that as a general rule, the corporate entity will be respected by the courts. There are circumstances, however, where the corporate form has been so abused that in order to do justice the corporate personality will be disregarded if rights of innocent third parties are not thereby prejudiced.

Whether the corporate entity will be disregarded or not depends largely on the factual determinations which are made in the particular case. *See Burns v. Norwesco Marine, Inc.,* 13 Wn. App. 414, 418–20, 535 P.2d 860 (1975)

and authorities collected therein. In discussing this issue, one of the leading texts on the subject, 1 M. Wolf, *Fletcher's Cyclopedia of the Law of Private Corporations* § 41, at 12 (perm. ed. rev. vol. 1974, Cum. Supp. 1978), states the following rule:

> Since *the issue is thus one of fact,* its resolution is particularly within the province of the trial court . . .

(Italics mine.) Without unduly belaboring the subject, I would hold that the findings of fact of the trial court were based on substantial evidence in the case and did support the trial court's decision to pierce the corporate veil and find Bergstrom personally responsible for his actions.

In this connection, it should be added that the trial court specifically found that Nordic was the alter ego of Arnold Bergstrom, and the rule in that regard is that

> [w]here the corporate fiction is merely an alter ego or business conduit of an individual, it may be disregarded in the interest of securing a just determination of an action.

18 Am. Jur. 2d *Corporations* § 15, at 562 (1965). *Accord, J.L. Cooper & Co. v. Anchor Sec. Co.,* 9 Wn.2d 45, 70, 113 P.2d 845 (1941); *Pohlman Inv. Co. v. Virginia City Gold Mining Co.,* 184 Wash. 273, 283, 51 P.2d 363 (1935). The trial court did not err in so concluding here.

Based on the facts discussed herein, I would hold that the trial court's findings above set out were based on substantial evidence and do support affirmance of the trial court. As an appellate court, we are constitutionally prohibited from substituting our findings for those of the trial court, *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); therefore, the trial court's findings should be considered as verities on this appeal.

For the foregoing reasons, I dissent from the majority opinion. I would affirm the trial court's judgment for Bessie Grayson, the householder, and would also award her an

additional $450, the sum she has requested as attorneys' fees on appeal.

Reconsideration denied February 14, 1979.

Appealed to Supreme Court March 8, 1979.