[No. 46100.   En Banc.   August 30, 1979.]

BESSIE GRAYSON, ET AL, *Appellants,* v. NORDIC CONSTRUCTION COMPANY, INC., *Defendant,* ARNOLD BERGSTROM, ET AL, *Respondents.*

*Young & Cole, Inc., P.S.,* by *Richard T. Cole,* for appellants.

*Reseburg & Reseburg,* by *Walter J. Reseburg, Jr.,* for respondents.

*Slade Gorton, Attorney General, Thomas L. Boeder, Senior Assistant,* and *Jon P. Ferguson, Assistant,* amici curiae.

WILLIAMS, J.—Bessie Grayson appeals from a decision of Division One of the Court of Appeals which in a less than unanimous opinion reversed the trial court's judgment imposing personal liability on Arnold Bergstrom for breach of contract and awarding Grayson attorney fees under the Consumer Protection Act, RCW 19.86. *Grayson v. Nordic Constr. Co.,* 22 Wn. App. 143, 589 P.2d 283 (1978). We reverse the Court of Appeals' decision and reinstate the trial court's judgment, although our conclusion rests on different grounds from those stated by the trial court.

Bessie Grayson lives in a house owned by her parents, Evelyn and Amos Grayson. In the summer of 1974, she received through the mail an advertising brochure from Nordic Construction Co., Inc. (Nordic). This brochure contained the phrase "FINANCING AVAILABLE". Upon receiving the brochure, Grayson telephoned Nordic and talked to Arnold Bergstrom, who was the president, general manager,

director, and majority stockholder of Nordic. Grayson notified Bergstrom that she needed to have a leak repaired in the roof of the house in which she lived. Bergstrom inspected the house and estimated the amount of work necessary to repair the leak. He reduced the estimate to a written agreement providing for an amount due of $2,053.35. In the contract, Bergstrom agreed to install all new roofing over the entire house except the front porch, and the work was to meet certain standards of quality. The contract also included work to be done on the eaves, gutters, downspouts, and front porch. The agreement was signed by Grayson and Bergstrom and was dated August 24, 1974.

Grayson needed financing in order to undertake the project. Bergstrom referred Grayson to a bank to obtain financing, and he gave her an application provided by the bank. Because Grayson did not own the house, she was unable to obtain bank financing for the amount needed. Bergstrom subsequently agreed to finance the construction himself. Pursuant to the financing agreement, Grayson was to make an initial payment of $300 upon receipt of which Bergstrom would begin the work. Grayson was then to make payments of $50 per month. Bergstrom promised to complete the job upon receipt of $400. Bessie Grayson made payments totaling $450, but the work was never completed.

Over a period of almost a year, work crews from Nordic periodically worked on the house, but failed to correct the leak. To complicate matters, a small fire broke out in one of the house's three dormers. Bergstrom agreed to repair the damage for an additional $480. Instead of repairing the damage, Nordic work crews tore the entire dormer off the house. When Amos Grayson saw the work crew removing the dormer, he told them to stop. The crews placed a clear plastic cover over the large hole in the roof and then left it unattended. Water damage in the house worsened from the leaks and hole where the dormer had been. Bergstrom told

members of the Grayson family that work would be continued shortly, but no workmen ever repaired the dormer or the roof.

In August of 1975, Bergstrom wrote a letter to Amos Grayson, stating:

> I have been unable to do the work as I haven't been able to handle the financing. I do not have the money to lay out at this time.

(Plaintiff's exhibit 12.) Another letter indicated that he needed to be paid $1,000 in order to continue work on the house. At that point, the Graysons informed Bergstrom that he had breached the contract. They hired another contractor who completed the work at a cost of $4,702.79. In 1976, Nordic filed for bankruptcy.

At trial, the Graysons sought to impose personal liability for breach of contract upon Bergstrom on the theory that Nordic operated as Bergstrom's alter ego. The Graysons also sought to prove that Nordic had violated RCW 19.86-.020, the Consumer Protection Act, through deceptive advertising.

At trial, the court found that Bergstrom breached the contract. In finding of fact No. 4 the court found that Bergstrom had drafted the mailers and directed that they be sent through the mail. Finding of fact No. 6 stated:

> That the mailers received by the Plaintiff and sent by the Defendant Arnold Bergstrom represented that financing was available. That Nordic Construction Company and Arnold Bergstrom did not have the capabilities to finance jobs as implied by the advertising received by the Plaintiffs.

The court further stated in finding of fact No. 7:

> That the court finds that the advertisements representing financing are violations of RCW 19.86.020 in that they are unfair and deceptive acts and practices which have the capacity or the tendency to deceive.

The trial court also made finding of fact No. 3, which stated, in part, that Bergstrom

carried out all activities of Nordic Construction Company as it relates to the Plaintiffs herein, as though the Plaintiffs were dealing with Arnold Bergstrom himself as an individual and that Nordic Construction was the alter ego of Arnold Bergstrom.

However, the trial court found no intentional wrongdoing on the part of Bergstrom. In accordance with these findings, the trial court entered judgment against Bergstrom personally in the amount of $3,099.44 for breach of contract and awarded the Graysons attorney fees in the amount of $500 pursuant to RCW 19.86.090 of the Consumer Protection Act.

Bergstrom appealed to Division One of the Court of Appeals. He assigned error to the trial court's findings that Nordic was the alter ego of Arnold Bergstrom and that the advertising mailers were drafted by and directed to be sent through the mail by Bergstrom. He also assigned error to the court's award of attorney fees under the Consumer Protection Act. Bergstrom *did not assign error,* however, to the trial court's findings of fact Nos. 6 and 7.

In a less than unanimous opinion, the Court of Appeals held that the trial court erred in imposing personal liability on Bergstrom and in awarding the Graysons attorney fees under the Consumer Protection Act. *Grayson v. Nordic Constr. Co., supra.* The Court of Appeals reasoned that there was no evidence to indicate that Bergstrom did not keep his own affairs and those of Nordic separate and that *as a matter of law* Nordic's representation that financing was available did not constitute an unfair or deceptive practice. The Graysons appealed pursuant to RAP 13.2(a). We reverse the Court of Appeals decision and reinstate the trial court's judgment in favor of the Graysons.

The Court of Appeals properly reversed the trial court's finding that Nordic operated as Bergstrom's alter ego.

A corporation exists as an organization distinct from the personality of its shareholders. *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 182 P.2d 643 (1947). When the

shareholders of a corporation, who are also the corporation's officers and directors, conscientiously keep the affairs of the corporation separate from their personal affairs, and no fraud or manifest injustice is perpetrated upon third persons who deal with the corporation, the corporation's separate entity should be respected. *Frigidaire Sales Corp. v. Union Properties, Inc.,* 88 Wn.2d 400, 562 P.2d 244 (1977).

The alter ego theory, upon which the trial court pierced the corporate veil and imposed personal liability upon Bergstrom, is applied when

> the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist. *Kueckelhan v. Federal Old Line Ins. Co. (Mut.),* 69 Wn.2d 392, 418 P.2d 443 (1966); *J.I. Case Credit Corp. v. Stark,* [64 Wn.2d 470, 392 P.2d 215 (1964)]; *W.G. Platts, Inc. v. Platts,* 49 Wn.2d 203, 298 P.2d 1107 (1956); *In re Estate of Trierweiler,* 5 Wn. App. 17, 486 P.2d 314 (1971).

*Burns v. Norwesco Marine, Inc.,* 13 Wn. App. 414, 418, 535 P.2d 860 (1975). It is clear from the record that Nordic was a closely held corporation. However, a corporation's separate legal identity is not lost merely because all of its stock is held by members of a single family or by one person. *Nursing Home Bldg. Corp. v. DeHart,* 13 Wn. App. 489, 535 P.2d 137 (1975). *See State v. Northwest Magnesite Co., supra.*

There was no evidence in this case that corporate records or formalities were not kept, nor does the record indicate an overt intention by Bergstrom to disregard the corporate entity. The trial court's finding that Nordic operated as Bergstrom's alter ego was not supported by substantial evidence and was correctly reversed by the Court of Appeals.

■ Although the trial court improperly pierced Nordic's corporate veil on the alter ego theory, we nonetheless find that personal liability was properly imposed on Bergstrom under the rule enunciated in *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 553

P.2d 423 (1976). If a corporate officer participates in wrongful conduct or with knowledge approves of the conduct, then the officer, as well as the corporation, is liable for the penalties. *State v. Ralph Williams' North West Chrysler Plymouth, Inc., supra; Johnson v. Harrigan–Peach Land Dev. Co.,* 79 Wn.2d 745, 489 P.2d 923 (1971). In *Ralph Williams,* this court considered a deceptive practice in violation of the Consumer Protection Act to be a type of wrongful conduct which justified imposing personal liability on a participating corporate officer.

The trial court stated in its finding of fact No. 4 that Bergstrom directed the mailing of the advertising brochure which was received by Bessie Grayson. In finding of fact No. 6, the court found that Bergstrom did not have the capabilities to finance jobs as implied in the brochures. In finding of fact No. 7, the court stated that the advertising constituted an unfair and deceptive act which had the capacity or tendency to deceive and was therefore a violation of RCW 19.86.020.

■ We find the court's finding of fact No. 4, which stated that Bergstrom directed the mailing of the brochures, to be supported by substantial evidence, and therefore we uphold the finding. *See Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). We further note that Bergstrom *assigned no error* to findings of fact Nos. 6 and 7, which determined the statement "FINANCING AVAILABLE" to be a misleading act and a violation of the Consumer Protection Act. Accordingly, we decline to review them. Viewing findings of fact Nos. 4, 6, and 7 together leads to the conclusion that Bergstrom is personally liable as a corporate officer who participated in a violation of the Consumer Protection Act under *Ralph Williams.*[1]

---

[1]In reversing the trial court, the Court of Appeals ruled that the question of whether an act is an unfair and deceptive act which has the capacity or tendency to deceive is a question of law. On appeal, the Graysons urge this court to rule that this determination is one of fact, not law, and review the issue on the narrow basis of whether there is substantial evidence to support the trial court's findings

Similarly, in upholding the trial court's findings of fact Nos. 4, 6, and 7, we find sufficient basis for the imposition upon Bergstrom of liability for attorney fees under RCW 19.86.090, which provides for attorney fees for a person who is injured in his business or property by a violation of the Consumer Protection Act.

The Court of Appeals is reversed, and the judgment of the Superior Court is reinstated.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and SKIMAS, J. Pro Tem., concur.

of fact. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). Since Bergstrom assigned no error to the trial court's findings on this question, we decline to review them on any basis. Accordingly, we do not reach the issue of whether this determination is one of fact or law. *Schneider v. Forcier,* 67 Wn.2d 161, 165, 406 P.2d 935 (1965).