**GENETIC IMPLANT SYSTEMS, INC., Plaintiff–Appellant,**

v.

**CORE-VENT CORPORATION and Gerald A. Niznick, Defendants–Appellees.**

**No. 97–1010.**

United States Court of Appeals, Federal Circuit.

Aug. 19, 1997.

Robert E. Rohde, Bogle & Gates, P.L.L.C., Seattle, WA, argued for plaintiff-appellant.

Sidford Lewis Brown, Bright & Lorig, P.C., Los Angeles, CA, argued for defendants-appellees.

Before PLAGER, Circuit Judge, SMITH, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

Genetic Implant Systems, Inc. appeals from the decision of the United States District Court for the Western District of Washington dismissing its complaint on the ground of lack of personal jurisdiction over defendants Core–Vent Corporation and Gerald A. Niznick. *Genetic Implant Sys., Inc. v. Core–*

*Vent Corp.*, No. C95-0709Z (W.D.Wash. Apr. 23, 1996). Because the district court erred in determining that it lacked jurisdiction over Core–Vent, but did not err in determining that it lacked jurisdiction over Niznick, we reverse-in-part and affirm-in-part.

## BACKGROUND

This appeal is from an action involving U.S. Patent 4,960,381, which issued on October 2, 1990 and claims dental implants. Niznick is the sole inventor named on the patent and he assigned the patent to Core–Vent, which is a Nevada corporation with its principal place of business in California. Niznick is the president, chief executive officer, sole shareholder, and sole board member of Core–Vent.

Core-Vent directly sold its dental implant products in the state of Washington until the issuance of the '381 patent in 1990. In April 1991, it entered into an exclusive worldwide marketing and distribution agreement with Dentsply International, Inc., a Delaware corporation with its principal place of business in Pennsylvania. Since 1991, Dentsply has made substantial sales of Core–Vent products in Washington, a significant portion of which are attributable to products covered by the '381 patent.

Genetic, a Washington corporation, alleges that after the patent issued, Niznick repeatedly and publicly threatened to sue Genetic and Stanley W. Sapkos, Genetic's chief executive officer, for infringement. In 1994–95, Core–Vent sent Genetic three letters accusing it of infringing the '381 patent and, in the third letter, it refused an offer of settlement by Genetic. Genetic alleges that Core–Vent also communicated its threats of infringement to others in the industry. According to Genetic, these threats have had a detrimental effect on its ability to market and sell its implants, in that potential customers have refused to purchase the implants due to fear of litigation. It also alleges that the threats successfully discouraged investment in Genetic. Accordingly, Genetic sued Core–Vent and Niznick on May 5, 1995, in the United States District Court for the Western District of Washington, requesting a declaratory judgment of noninfringement and invalidity of the '381 patent. Core–Vent and Niznick moved to dismiss on the ground of lack of personal jurisdiction.

The district court granted the motion. The court found that Core–Vent's threats of infringement, in view of the fact that Core–Vent had only a distributorship agreement with an out-of-state company, were insufficient to establish purposeful availment of the privileges and benefits of the state of Washington. It found that, even if Core–Vent's activities did constitute purposeful availment, it would be unreasonable to force Core–Vent to defend itself in the state of Washington. The court thus dismissed the action against Core–Vent. It also dismissed the action against Niznick, concluding that, under Washington law, Genetic had not pleaded facts sufficient to disregard the corporate form in order to assert jurisdiction over Niznick as an individual. Genetic now appeals to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

■ Whether a court has personal jurisdiction over a defendant is a question of law that we review *de novo*. *Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 427, 38 USPQ2d 1833, 1834 (Fed.Cir.1996).

■ Genetic argues that Core–Vent initiated and maintained sufficient minimum contacts with the state of Washington to subject itself to personal jurisdiction. Genetic asserts that Core–Vent purposefully directed its sales and marketing activities to residents of the state, and that the present declaratory judgment action arises out of or relates to those activities. Core–Vent responds that it does not maintain contacts with and does not direct sufficient commerce into Washington to justify assertion of personal jurisdiction over the company. It argues that sending cease-and-desist letters into the forum is not sufficient to establish personal jurisdiction. It asserts that the combination of sales of its products in Washington and the warning letters still do not establish personal jurisdiction, as the sales occurred prior to issuance of the patent and thus are irrelevant to a determination of jurisdiction.

Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–76, 105 S.Ct. 2174, 2181–84, 85 L.Ed.2d 528 (1985). The relevant provision of the Washington long-arm statute identifying acts that may subject a defendant to jurisdiction reads as follows:

4.28.185. Personal service out of state— Acts submitting person to jurisdiction of courts—Saving

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;

. . . .

Wash. Rev.Code § 4.28.185 (1996). The scope of the "transaction of any business" criterion set forth in the statute is co-extensive with the limits of due process. *See Quigley v. Spano Crane Sales & Serv., Inc.,* 70 Wash.2d 198, 422 P.2d 512, 514 (1967); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wash.2d 106, 381 P.2d 245, 251 (1963). The focus of the inquiry in this case is therefore whether assertion of jurisdiction over Core–Vent in Washington comports with due process. That inquiry involves consideration of three factors: whether the defendant purposefully directed its activities at residents of the forum, whether the claim arises out of or relates to the defendant's activities with the forum, and whether assertion of personal jurisdiction is reasonable and fair. *Akro Corp. v. Luker,* 45 F.3d 1541, 1545–46, 33 USPQ2d 1505, 1508–09 (Fed.Cir.1995) (citing *Burger King,* 471 U.S. at 471–76, 105 S.Ct. at 2181–84).

We agree with Genetic that Core–Vent has had sufficient minimum contacts with the state of Washington. We have held that sending infringement letters, without more activity in a forum state, is not sufficient to satisfy the requirements of due process.

Other activities are required in order for a patentee to be subject to personal jurisdiction in the forum. *See id.* at 1548–49, 33 USPQ2d at 1511. Here, however, Core–Vent did more than send cease-and-desist letters to Genetic in Washington. In particular, it engaged in a program to develop a market in Washington, including founding teaching centers in Seattle staffed by local periodontists, developing Washington customer lists through the teaching centers, and advertising in publications distributed to potential Washington customers. These pre–1991 activities resulted in substantial revenue from sales in Washington and contributed to Core–Vent's presence in Washington by producing a customer base in the state that may result in or enhance future sales. The fact that they may have occurred before the grant of the patent is irrelevant since they do show that Core–Vent engaged in substantial activities in the state. It is jurisdiction that is at issue, not liability for patent infringement. In addition, and most significant, since 1991, Core–Vent and Niznick have contracted with Dentsply to sell Core–Vent's patented products in Washington. Dentsply has two sales representatives in Washington and, since 1991, has sold in the state a substantial dollar amount of Core–Vent products covered by the '381 patent.

We concluded in *Akro* that infringement letters sent into a forum state accompanied by the grant of a license to an in-state competitor doing business in the state were sufficient to justify assertion of personal jurisdiction against an out-of-state patentee. *Id.* The appointment of a distributor to sell a product covered by a patent is analogous to a grant of a patent license. Such an action conveys an implied license to the distributor, thereby surrendering the patentee's right to exclude the distributor under the patent. *See* 35 U.S.C. § 154(a)(1) (1994) ("Every patent shall contain . . . a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States . . . ."). In the Dentsply agreement Core–Vent appointed Dentsply as the "exclusive worldwide distributor" of its dental implant products. It granted Dentsply the right to distribute the products, and it

agreed not to appoint "any other person, firm or entity to sell or otherwise distribute" the products, which includes dental implants covered by the '381 patent.

The agreement contained other provisions similar to those typically found in a patent license agreement. Core–Vent agreed to maintain all patents covering the products and it agreed to file and prosecute applications for patents covering new products. Core–Vent also retained the right to pursue claims for infringement and it agreed to indemnify Dentsply for liability arising from any third party patent infringement action related to Dentsply's sale, use, or making of the products. Finally, Core–Vent authorized Dentsply to use Core–Vent's trademarks in marketing and distributing the products. Accordingly, Core–Vent purposefully availed itself of the facilities of the state of Washington; moreover, the cause of action is clearly related to or arises out of its activities in Washington. *Cf. Akro,* 45 F.3d at 1548–49, 33 USPQ2d at 1511.

■ Core-Vent argues nonetheless that it cannot be subject to personal jurisdiction as a result of Dentsply's sales of its products in Washington because Dentsply is not its agent and is not an in-state licensee. We do not agree. Core–Vent's distinction between in-state and out-of-state distributors is not tenable; the fact that Dentsply is not a Washington corporation is not determinative. Dentsply is present in Washington in the sense that it promotes and sells Core–Vent's patented products in the state; thus, it is transacting business "in-state."

■ Core-Vent argues that, although the first two factors in the personal jurisdiction inquiry may be satisfied, assertion of jurisdiction over it would not be reasonable and fair. It asserts that a defendant's minimum contacts may be considered in light of additional factors to "determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case

that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. at 2184–85; *see World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980) (listing factors to consider in determining the reasonableness of asserting jurisdiction over a defendant).

Core-Vent has not shown that requiring it to defend itself in Washington would be unreasonable or unfair. It has not shown, for example, that it would be inconvenient for it to litigate in Washington or that the forum state does not have a sufficient interest in resolving the dispute. *See World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564–65. Entering into an exclusive distributorship agreement authorizing the distribution of its trademarked and patented products in Washington is sufficiently analogous to entering into a patent license agreement, which we have previously concluded is a sufficient contact, in combination with cease-and-desist letters, to comply with the requirements of due process. *See Akro,* 45 F.3d at 1548–49, 33 USPQ2d at 1511. Accordingly, the district court erred in dismissing the complaint on the ground of lack of personal jurisdiction over Core–Vent.

■ Genetic finally argues that the court also has jurisdiction over Niznick. It argues that he is not entitled to use the corporate form to shield himself from liability. According to Genetic, Niznick acted as an individual when dealing with Dentsply and when making the tortious accusations against Genetic and is therefore subject to jurisdiction in the state. Core–Vent responds that the facts alleged by Genetic are insufficient to disregard the corporate form and subject Niznick to jurisdiction in Washington.

■ We agree with Core–Vent that Niznick is not subject to personal jurisdiction in Washington. Under Washington law, a court may disregard the corporate form only if a principal has disregarded the corporate entity "so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist." *Burns v. Norwesco Marine, Inc.,* 13 Wash.App. 414, 535 P.2d 860, 863 (1975). There is insufficient evidence that Niznick disregarded the

corporate form. It is true that he owns and controls Core–Vent; he is the president, chief executive officer, and sole owner of the corporation. It is also true that the Dentsply agreement was signed by Niznick as president on behalf of Core–Vent and as "Dr. Gerald Niznick, Individually," and that he was expressly made a party to the agreement. However, those facts alone are insufficient to show that the corporate form was disregarded. It is permissible for one person to be the sole owner of a corporation. *See Grayson v. Nordic Const. Co.*, 92 Wash.2d 548, 599 P.2d 1271, 1274 (1979) (stating that "a corporation's separate legal identity is not lost merely because all of its stock is held by members of a single family or by one person"). It was also permissible for Dentsply to contract with both the corporation and Niznick individually.

A court may disregard the corporate form under Washington law only if the principal personally participates in alleged wrongful conduct or approves the conduct. *See id.* In *Grayson*, the Supreme Court of Washington imposed personal liability on a principal of a corporation based upon his illegal conduct consisting of a violation of the Washington Consumer Protection Act. *Id.* In comparison, Niznick's alleged wrongful conduct consists only in his participation in the alleged threats of infringement against Genetic, directing that the notice of infringement letters be sent to Genetic in Washington. Sending cease-and-desist letters is not illegal conduct warranting disregard of the corporate form. Accordingly, the district court did not err in determining that it lacked jurisdiction over Niznick.

We have considered the parties' other arguments and find that they are either unpersuasive or unnecessary for resolution of this appeal.

## CONCLUSION

The district court erred in holding that it did not have jurisdiction over Core–Vent. Core–Vent has had sufficient minimum contacts with the state of Washington, and the exercise of jurisdiction over it is reasonable and fair in light of its exclusive distributorship agreement with Dentsply. The district court did not err in determining that it lacked jurisdiction over Niznick. Accordingly, we reverse the judgment of the district court dismissing Genetic's complaint against Core–Vent, affirm its judgment dismissing Genetic's complaint against Niznick, and remand for further proceedings.

## COSTS

Each party shall bear its own costs.

*AFFIRMED-IN-PART AND RE-VERSED–IN–PART.*