[No. 6677–1. Division One. September 4, 1979.]

SEATTLE INTERNATIONAL CORPORATION, ET AL, *Respondents,* v. COMMERCE AND INDUSTRY INSURANCE COMPANY, ET AL, *Appellants.*

*Clarke & Bovingdon* and *Fred G. Clarke, Jr.,* for appellants.

*Norman W. Cohen,* for respondents.

WILLIAMS, J.—Seattle International Corporation brought this action seeking recovery on its employee dishonesty insurance policy with Commerce and Industry Insurance Company for money misappropriated by the corporation president and manager, Gary Daggett. The policy provides coverage for loss of money due to "any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others." Commerce Insurance denied coverage claiming that Daggett was not an "employee" of Seattle International, but rather a named insured with a vested interest in the corporation. In a nonjury trial, the trial court granted judgment for Seattle International, but for less than the sum misappropriated. Both parties appeal. We affirm.

Seattle International, a corporation solely held by Angelo and Jean Citoli, owned and operated a franchise pancake house restaurant in Seattle. Gary Daggett was hired as a cook and later became the restaurant manager. In late 1971, the Citolis sold Daggett and his wife all of the stock of the corporation under a monthly installment payment

agreement which placed the stock in escrow until full payment, but gave Daggett all of the voting rights. After the contract was signed, Daggett and his wife joined the Citolis and a third person as the five directors of the corporation. Daggett was elected president and continued to manage the establishment. In 1973 and early 1974, Daggett misappropriated $73,575 from the corporation, stopped the monthly payments, and left for parts unknown. Seattle International filed a claim for that amount against Commerce and Industry Insurance Company, which denied coverage. This action followed.

The policy accorded coverage to Seattle International for:

> Loss of Money, Securities and other property which the Insured shall sustain, to an amount not exceeding in the aggregate the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement IA through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others.

Under the definition section of the policy an "Employee"

> means any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the Effective Period of this endorsement and whom the Insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, . . .

Excluded is a loss "due to any fraudulent, dishonest or criminal act by any Insured or a partner therein, whether acting alone or in collusion with others; . . ."

■ Commerce Insurance argues that Daggett had complete practical control and domination of the corporation when the money was taken because he had the right to vote the corporate stock and was personally directing the operations. His acts of theft, therefore, were those of the corporation. In support of this argument, Commerce Insurance quotes from 18 R. Anderson, *Couch Cyclopedia of Insurance Law* § 74:671, at 593 (2d ed. 1968) as follows:

Acts of corporate officers and agents.

Since a corporation has no personal existence and can act only through its officers and agents, it follows that when corporate officers or agents wilfully or fraudulently cause the destruction of the insured property such conduct is in the eyes of the law the conduct of the insured corporation and bars recovery. Consequently, if an insured corporation's officers or manager instigate a fire for the purpose of enabling it to profit thereby, the policy is avoided.

(Footnotes omitted.)

This section in Couch is cited in *Erlin–Lawler Enterprises, Inc. v. Fire Ins. Exch.*, 267 Cal. App. 2d 381, 385, 73 Cal. Rptr. 182, 37 A.L.R.3d 1378 (1968) with the following basic rule deduced:

The arsonist's status as an officer, stockholder, employee or agent of an insured corporation does not necessarily preclude the corporation from recovering upon the policy of insurance. The basic function of the court is to see that no one takes advantage of his own wrong.

In this case, the corporation was not enabled to profit from Daggett's theft and no one seeks to take advantage of his wrong. The corporation only wishes to be reimbursed for the money dishonestly taken from it.

Insofar as Daggett's control is concerned, the trial court found on substantial evidence that:

Subsequent to the contracts for purchase and sale of the stock herein in evidence, Seattle International Corporation remained an active corporation holding regular meetings, and meetings of the Board of Directors, as well as bringing before the stockholders and/or Board of Directors items of special business which arose from time to time.

Finding of fact No. 6.

Thus, the right to vote the stock did not establish Daggett as the corporation. A corporation's separate legal identity is not lost because all of its stock is held by members of a single family or by one person. More is required. *Nursing Home Bldg. Corp. v. DeHart*, 13 Wn. App. 489, 495, 535 P.2d 137, *review denied*, 86 Wn.2d 1005 (1975).

Commerce did not prove that the corporate entity should be disregarded. *Critzer v. Oban,* 52 Wn.2d 446, 452, 326 P.2d 53 (1958). If Daggett's voting control was an unacceptable hazard, Commerce Insurance could have inserted a provision in the policy concerning it.

On its cross appeal, Seattle International contends that the trial court erred in calculating the amount of the judgment. The court found that Daggett misappropriated $73,575 from the corporation over a period of time by writing checks to himself and his family, but allowed recovery for $61,450 only. It is apparent that the court found Seattle International entitled to the lesser sum because Daggett was named as an insured in a policy renewal at the time that he had taken only $61,450. The amount taken thereafter, $12,125, was excluded because, as a named insured, Daggett was not covered by the policy. A stipulation to the effect that "Seattle International Corporation was an insured" does not change the result.

Affirmed.

FARRIS and ANDERSEN, JJ., concur.